COONEY, GOVERNOR, ET AL. v. MOUNTAIN STATES TELEPHONE & TELEGRAPH CO.

No. 423. Argued February 7, 8, 1935.—Decided March 4, 1935.

*Mr. Enor K. Matson,* Assistant Attorney General of Montana, with whom *Mr. Raymond T. Nagle,* Attorney General, was on the brief, for appellants.

*Messrs. Elmer L. Brock* and *M. S. Gunn,* with whom *Messrs. Milton Smith* and *E. R. Campbell* were on the brief, for appellee.

Mr. Chief Justice Hughes delivered the opinion of the Court.

The Mountain States Telephone and Telegraph Company brought this suit to restrain the enforcement of two acts of the legislature of Montana imposing annual license taxes. The first act is Chapter 174 of the Laws of 1933 prescribing a tax, to be paid on or before January first, for each telephone instrument used in the conduct of the business of operating or maintaining telephone lines and furnishing telephone service in the State of Montana. The tax is not to be imposed on telephone instruments where the rate charged to the customer does not exceed specified monthly amounts. The second act, Chapter 54 of the Laws of 1933–34, amended the first act with respect to the amount of the tax, the date of payment, and other particulars, and continued the first act in force as to taxes already accrued. The text of the acts is set forth in the margin.[1]

---

[1] Chapter 174 of the Laws of 1933, approved March 16, 1933, provides:

"Section 1. Every person, firm, copartnership, association, joint stock company, syndicate and corporation engaged in the business of operating or maintaining telephone lines and furnishing telephone service in the State of Montana, whether as owner, lessee, trustee or receiver or in any other capacity, shall pay in to the State Treasurer on or before the first day of January each year a license tax in the amounts following for each telephone instrument used, controlled and operated by it in the conduct of such business, based upon the number of telephone instruments owned, controlled and operated by it during all or any part of the calendar year, to-wit: On the first twenty (20) telephone instruments or less a license tax of Ten Cents (10¢) per phone; from twenty (20) to seventy-five (75) such instruments a license tax of Twenty Cents (20¢) per phone, and on all above seventy-five (75) a license tax of One Dollar ($1.00) for each such instrument. The license tax so paid shall in no manner affect the rates charged to the patrons and users of such telephone instruments, but

The acts were assailed as repugnant to both the federal and state constitutions. One of these grounds, that the acts were invalid under the commerce clause of the Fed-

shall be borne entirely by the owning and operating concern. Provided, the tax herein provided for shall not be imposed on any telephone instrument where the rate charged the customer therefor does not exceed Two Dollars ($2.00) per month for residence phone, or Three Dollars ($3.00) per month for business house or office phone.

" Section 2. A telephone instrument is hereby defined to be a transmitter and receiver capable of use in the transmitting and receiving of telephone communications.

" Section 3. Any violation of any of the provisions of this Act shall be deemed a misdemeanor and shall be punished by fine of not more than One Thousand Dollars ($1,000) or by imprisonment in the county jail not exceeding six (6) months, or by both such fine and imprisonment.

" Section 4. All license fees paid to the State Treasurer under the provisions of this Act shall be by him, before the end of each fiscal year, divided by the counties in this state according to the number of telephone instruments in use from time to time in the respective counties of the state and on each such computation and division the State Treasurer shall transmit the share of each county to the County Treasurer thereof, for the use and benefit of the county general fund.

" Section 5. This Act shall be in full force and effect from and after its passage and approval."

The amending act (c. 54 of the Laws of 1933–34) approved January 20, 1934, provides:

" Section 1. That Section 1, of Chapter 174, of the Session Laws of 1933, be amended to read as follows:

" Section 1. Every person, firm, co-partnership, association, joint stock company, syndicate and corporation engaged in the business of operating or maintaining telephone lines and furnishing telephone service in the State of Montana, whether as owner, lessee, trustee or receiver or in any other capacity, shall pay in to the State Treasurer on or before the first day of March each year a license tax in the amounts following for each telephone instrument used, controlled and operated by it in the conduct of such business:

"A license tax of Two Dollars ($2.00) for each such instrument.

" No bill, statement or account rendered or given any customer by any telephone company shall set out or contain, as a separate item,

eral Constitution, was sustained by the District Court of three judges (28 U. S. C. 380) which entered a final decree permanently enjoining enforcement. 7 F. Supp. 12. The defendants, state officers, bring this appeal.

The District Court received evidence and made findings of fact substantially as follows: Plaintiff is a Colorado corporation operating a statewide telephone system in Montana; it furnishes telephone service of an interstate and intrastate character; its system extends throughout Mon-

---

any amount on account or by reason of the license tax imposed by this Act. Every person, firm, co-partnership, association, joint stock company, syndicate or any corporation affected by the provisions of this Act shall be permitted to claim as exempt from the tax imposed by this Act any telephone instrument where the rate charged the customer therefor does not exceed Two Dollars ($2.00) per month for residence phone, or Four Dollars ($4.00) per month for business house or office phone. Provided further, that the provisions of this Act shall not apply to mutual telephone companies or lines not organized or used or operated for private or corporate gain.

" Section 2. That Section 4, of Chapter 174, of the Session Laws of 1933, be amended to read as follows:

" Section 4. Five per centum (5%) of the license fees paid to the State Treasurer under this Act are hereby appropriated and shall be set aside by him for the purpose of defraying the cost of administering this Act by the State Board of Equalization, and the remaining ninety-five per centum (95%) thereof shall be by him credited to the Emergency Relief Fund until such time as the Governor may issue a proclamation to the effect that the same is no longer required for such Emergency Relief Fund, and after the issuance of such proclamation said ninety-five per centum (95%) of such license fees shall be by such State Treasurer credited to the General Fund of the State."

" Section 3. No tax which has attached, accrued, or become due or payable under the provisions of Chapter 174, Session Laws, 1933, shall be released or waived by the passage or approval of this Act but the same shall be paid as provided in said Chapter before its amendment by this Act.

" Section 4. This Act shall be in full force and effect from and after its passage and approval."

tana, Idaho, Utah, Wyoming, Colorado, Arizona, New Mexico, and a part of Texas; its telephone instruments in Montana are an integral part of its system, and are a part of a still greater system extending throughout the United States and to many foreign countries, so that each of the telephones in Montana (except 45 not affected by the statute) is available for interstate and foreign communication by connection with many millions of telephones; the statute in question affects over 34,000 of the telephones in Montana, and, of these, more than 10,000 have actually been used in interstate and foreign commerce since the statute was enacted, and it is reasonably likely that all plaintiff's telephone instruments in Montana will be so used; plaintiff pays the usual property taxes in Montana and also the corporation license or occupation taxes, which are a percentage of its intrastate revenues; all its telephones are instrumentalities of interstate and foreign commerce and plaintiff " could not discontinue its intrastate business and operations in Montana without virtually destroying and being compelled to abandon and withdraw from its interstate and foreign business."

Appellants contend that the taxes are imposed solely upon intrastate commerce and do not burden interstate commerce. They insist that the taxes are laid upon the intrastate business measured by the number of telephones in intrastate use. Appellants challenge the findings that all of appellee's telephones in Montana are instrumentalities of interstate and foreign commerce, and that appellee could not discontinue its intrastate business without being compelled to withdraw from its interstate and foreign business, as being unsupported by the evidence.

1. It does not appear that these acts have been construed by any decision of the state courts. Appellants cite a decision of the Supreme Court of Montana construing § 4071 of the Political Code of 1895, as amended by the laws of 1897, p. 202, which provided for a tax on tele-

phone companies doing business in the State of a certain amount per year for each instrument in use. *State* v. *Rocky Mountain Bell Telephone Co.,* 27 Mont. 394; 71 Pac. 311. In view of the terms of that statute, the court concluded that the legislature intended to impose a license tax " on each telephone instrument used in purely local or intrastate business, and that as to instruments used in interstate business it was intended to have no application whatever." *Id.,* p. 404. Compare *Ogden City* v. *Crossman,* 17 Utah 66; 53 Pac. 985. A few days later, the Supreme Court of Montana decided the case of *State* v. *Northern Pacific Express Co.,* 27 Mont. 419; 71 Pac. 404; and held that the occupation tax imposed by § 4074 of the Political Code of the State, as applied to an express company, offended against the commerce clause of the Federal Constitution. The court distinguished its ruling in the case of the *Rocky Mountain Bell Telephone Co.* because the statute there " by express terms " had discriminated " between local and interstate commerce " and the intention that " only local business " should be subject to the license tax " was clearly expressed." The court thus stated the principle which it considered to be applicable (*id.,* p. 422): " If, however, the terms of the statute are general, and the license fee a unit charged against the business of the carrier as such,—as strictly an occupation tax,—and no attempt is made by the language of the statute to discriminate between the local and interstate business, but the license is required as a condition precedent to the carrier's commencing or conducting business, then the imposition of the tax will be deemed an interference with and an attempt to regulate interstate commerce, and for that reason void." Applying that principle, the court found the tax upon the express company to be invalid as the statute did not " by its terms attempt to make any discrimination between the local and interstate business of the defendant company, and no such

discrimination can be made under any fair construction of the language employed." *Id.*, p. 427. It is evident that these decisions of the state court do not aid appellants' contention.

The tax is a privilege, or occupation, tax. The terms of the acts are explicit with respect to the incidence of the tax. Chapter 174 of the Laws of 1933 provides that every corporation " engaged in the business of operating or maintaining telephone lines and furnishing telephone service in the State of Montana . . . shall pay . . . a license tax . . . for each telephone instrument used, controlled and operated by it in the conduct of such business." The business is the maintaining of telephone lines and the furnishing of telephone service in the State. No distinction is made between interstate and intrastate service. The tax is then stated to be " for each telephone instrument used, controlled and operated." Again, there is no limitation as to use, control or operation in intrastate business. The tax is " based upon the number of telephone instruments owned, controlled and operated." during all or any part of the calendar year. A " telephone instrument " is defined in section two of the act as " a transmitter and receiver capable of use in the transmitting and receiving of telephone communications." The tax is thus laid simply by reason of the fact that the company is furnishing telephone service and is based upon the number of telephone instruments used in that service without regard to its character whether intrastate or interstate. The provision of the second tax act, Chapter 54 of the Laws of 1933–34, is in this respect substantially the same.

To support their contention, appellants point to the proviso, in the first act, that the tax " shall not be imposed on any telephone instrument where the rate charged the customer therefor does not exceed Two Dollars ($2.00) per month for residence phone, or Three Dollars ($3.00) per month for business house or office phone." There is a cor-

responding exclusion in the second act.[2] But these are merely exempting provisions. They carve out of the statute telephone instruments for which certain monthly rates are paid. The question is not as to the instruments that are not taxed, but as to those which are taxed. All the telephone instruments, not excepted, whether they are used in intrastate or interstate commerce and however the service is paid for, are left subject to the tax. It is urged that monthly rates are charged to the customer for merely local service and are distinct from toll rates or charges for long distance calls which, whether intrastate or interstate, are on a "board to board" basis. But the tax is not laid on revenues. It is not laid on revenue derived from monthly rates as distinguished from toll charges. It is not imposed with respect either to the nature of the revenue, or to the character of the service from which the revenue is derived, or to the manner in which the charges for the service are fixed.

The evidence supports the findings that these telephone instruments are available for interstate and foreign communications. Appellants contend that a "potential use, or even an occasional use for interstate or foreign commerce, is too remote, indefinite and indirect to permit such instruments to be classified as instrumentalities of interstate or foreign commerce, when, in fact, such instruments are used exclusively or almost exclusively for intrastate commerce." But the telephone instruments constitute a class of facilities, which, as such, are subject to the tax, and the findings, based on evidence, show that the interstate use is actual, not merely potential; substantial, not negligible. More than 10,000 of these instruments have actually been used in interstate and foreign commerce since the tax was laid. The evidence also shows that the same telephones, the same signaling apparatus, the same

---

[2] See Note 1.

wires, land, buildings, central office equipment, and operating organization are used in common for all services, interstate as well as intrastate. It was in this view that the District Court held that it was not feasible to provide separate statewide systems for intrastate and interstate telephones. But, apart from that question, it appears that in the operation of this unified system, the telephone instruments are the means by which the customers command at their pleasure the service they desire whether intrastate or interstate. And, so far as the instruments are not excepted, the tax is laid indiscriminately with respect to each of these facilities, regardless of the nature of their use.

2. There is no question that the State may require payment of an occupation tax from one engaged in both intrastate and interstate commerce.[3] But a State cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it.[4] And the fact that a portion of a business is intrastate and therefore taxable does not justify a tax

---

[3] *Ratterman* v. *Western Union Telegraph Co.,* 127 U. S. 411; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *Lehigh Valley R. Co.* v. *Pennsylvania,* 145 U. S. 192; *Postal Telegraph Cable Co.* v. *Charleston,* 153 U. S. 692; *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Co.,* 191 U. S. 171; *Kehrer* v. *Stewart,* 197 U. S. 60; *Ohio Tax Cases,* 232 U. S. 576; *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S 350; *People ex rel. Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549; *Postal Telegraph Cable Co.* v. *Richmond,* 249 U. S. 252; *Postal Telegraph Cable Co.* v. *Fremont,* 255 U. S. 124; *Raley & Bros.* v. *Richardson,* 264 U. S. 157; *East Ohio Gas Co.* v. *Tax Commission,* 283 U. S. 465.

[4] *State Freight Tax Case,* 15 Wall. 232; *Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34; *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *Leloup* v. *Mobile,* 127 U. S. 640; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Adams Express Co.* v. *New York,* 232 U. S. 14; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Sprout* v. *South Bend,* 277 U. S. 163, 171; *New Jersey Bell Telephone Co.* v. *State Board of Taxes,* 280 U. S. 338.

either upon the interstate business or upon the whole business without discrimination. *Leloup* v. *Mobile,* 127 U. S. 640. There are " sufficient modes " in which the local business may be taxed without the imposition of a tax " which covers the entire operations." *Id.,* p. 647. See *Williams* v. *Talladega,* 226 U. S. 404, 419. Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Sprout* v. *South Bend,* 277 U. S. 163, 171; *East Ohio Gas Co.* v. *Tax Commission,* 283 U. S. 465, 470.

A privilege or occupation tax which a State imposes with respect to both interstate and intrastate business, through an indiscriminate application to instrumentalities common to both sorts of commerce, has frequently been held to be invalid. *Leloup* v. *Mobile, supra; Pickard* v. *Pullman Southern Car Co.,* 117 U. S. 34, 46; *Crutcher* v. *Kentucky,* 141 U. S. 47, 59; *Adams Express Co.* v. *New York,* 232 U. S. 14, 29, 31; *United States Express Co.* v. *New York,* 232 U. S. 35, 36; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 647, 648. In the cases of the express companies, the principle was applied to a privilege tax imposed alike with respect to wagons used in the movement of both interstate and intrastate shipments. The local shipments " were handled in the same vehicles, and by the same men " that were employed in connection with the interstate transportation and it was impracticable to effect a separation. *Adams Express Co.* v. *New York, supra; United States Express Co.* v. *New York, supra.* In *Bowman* v. *Continental Oil Co., supra,* the question arose under a statute of New Mexico laying an annual license tax of

fifty dollars for each station distributing gasoline. The Court pointed out the distinction between an excise tax on sales of gasoline where, as the subject matter was separable, full protection could be afforded by enjoining enforcement as to the interstate business, and the license tax which with its prohibition fell upon the business as a whole. The Court said: " But with the license tax it is otherwise. If the statute is inseparable, then both by its terms and by its legal operation and effect this tax is imposed generally upon the entire business conducted, including interstate commerce as well as domestic; and the tax is void." The difficulty, continued the Court, " is that, since plaintiff, so far as appears, necessarily conducts its interstate and domestic commerce in gasoline indiscriminately at the same stations and by the same agencies, the license tax cannot be enforced at all without interfering with interstate commerce unless it be enforced otherwise than as prescribed by the statute—that is to say, without authority of law. Hence, it cannot be enforced at all."

In the instant case, the tax, being indivisible and indiscriminate in its application, necessarily burdens interstate commerce. We do not pass upon the other questions presented.

*Decree affirmed.*