# COVERDALE, SHERIFF AND EX-OFFICIO TAX COLLECTOR, *v.* ARKANSAS-LOUISIANA PIPE LINE CO.

No. 458. Argued February 28, 1938.—Decided April 4, 1938.

*Messrs. E. Leland Richardson* and *F. A. Blanche,* Assistant Attorneys General, with whom *Messrs. Gaston L. Porterie,* Attorney General, and *J. C. Daspit,* Assistant Attorney General, of Louisiana, were on the brief, for appellant.

*Mr. Leon O'Quin,* with whom *Mr. H. C. Walker, Jr.* was on the brief, for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

The question is whether a state statute imposing a privilege tax on the production of mechanical power contravenes the interstate commerce clause in so far as it is applied to an engine used to supply mechanical power to a compressor which increases the pressure of natural gas and thus permits it to be transported to purchasers in other states.

Act No. 6 of the Regular Session of 1932 of the Louisiana Legislature, with certain qualifications and exceptions not material here, provides for a license tax to be paid by everyone engaged within the State in the business of manufacturing or generating electricity for heat, light or power, § 1, or of selling electricity not manufactured or generated by him or it, § 2. Section 3 provides that every person, firm, corporation, or association, engaged within the State in any business, which uses in the conduct of

that business electrical or mechanical power of more than ten horsepower and does not procure all the power from a taxpayer subject to § 1 or § 2, "shall be subject to the payment of an excise, license, or privilege tax of One Dollar ($1.00) per annum for each horsepower of capacity of the machinery or apparatus, known as the 'prime mover' or 'prime movers,' operated by such person, firm, corporation or association of persons, for the purpose of producing power for use in the conduct of such business or occupation; . . ."

Appellee is engaged within Louisiana, Arkansas, and Texas, in the business of producing and buying, transporting and selling natural gas. The gas is obtained from the Monroe and Richland fields in Louisiana, and transported through appellee's 20-inch pipe line, one of the largest in the Southwest, which extends from Sterlington, Louisiana, to Blanchard, Louisiana, where one branch goes west into Texas, and the other north into Texas and Arkansas up to Little Rock. Ninety-six and 6/10 per cent. (96.6%) of the gas transported through this line during the fiscal year ended July 31, 1933, was delivered outside the State of Louisiana.

The natural gas cannot be transmitted through this pipe line for these distances in amounts sufficient to meet the needs of appellee's customers, unless it is delivered into the pipe line at a pressure higher than that at which it comes from the wells. Accordingly, appellee maintains in Louisiana, at the point of intake into the line, its "Munce Compressor Station" where are located ten pumps, or natural gas compressors, which operate to increase the pressure of the gas to the required extent. These compressors are directly connected to ten four-cylinder 1,000 horsepower Cooper Bessemer internal combustion gas burning engines. There are also two 250 horsepower gas burning engines for general power service at the station. The tax is laid on the privilege

of operating these twelve gas engines, known as "prime movers,"[1] and is imposed at the rate of $1 per horsepower capacity of the engine—i. e., a total tax of $10,500.

Appellee's complaint, setting forth these facts, was filed in the District Court for Western Louisiana. It prayed that the tax be declared invalid and that the appellant, sheriff, be enjoined from selling appellee's property to enforce payment of $7,316, plus certain penalties and attorney fees, as the balance of the "prime mover tax" due for the year ending July 31, 1933.[2] An *ex parte* temporary restraining order was issued. A statutory three-judge court was convened, and a preliminary injunction granted, 17 F. Supp. 34. The statute was held invalid for the reason, among others, that as applied to this case it imposed an unconstitutional burden on interstate commerce. On a rehearing, the court, with one dissent, determined again that it was invalid, with the violation of the commerce clause as the sole basis of decision, 17 F. Supp. 36.[3] After answer and submission of affidavits

[1] This term, used in § 3, *supra,* is not defined elsewhere in the statute. Webster's New International Dictionary (2d ed. unabridged, 1936) p. 1964, contains the following: "**prime mover.** *Mech.* . . . b An initial source of motive power, as an engine, or machine, the object of which is to receive and modify force and motion as supplied by some natural source, and apply them to drive other machinery, as a water wheel, a water-pressure engine, a wind-mill, a turbine, a tidal motor, a steam engine or other heat engine, etc." As explained by expert witnesses for the appellant, the internal combustion gas engine is a prime mover which converts heat energy, contained in the natural gas as fuel, into mechanical energy, then supplied to and used by the compressor unit.

[2] Appellee alleged that it had paid part of the tax imposed by the statute in order to avoid a forced sale.

[3] The first opinion also held the statute invalid in its entirety (on the authority of *Union Sulphur Co.* v. *Reid,* 17 F. Supp. 27), as a property tax laid at a rate prohibited by the state constitution, and as a denial of due process in providing for collection without any review of the action of the state supervisor of public accounts. After

by both parties, the court granted a permanent injunction, 20 F. Supp. 676. The case was brought here on direct appeal. Judicial Code, §§ 238 (3), 266, 28 U. S. C. §§ 345 (3) 380.

*First.* The character of the tax act under consideration is clear. It is a revenue measure obtaining funds by levying a privilege tax on those generating or selling electricity in Louisiana. §§ 1 and 2. Presumably to protect this source of revenue against tax-free competition, § 3,[4] with

the decision in *State* v. *H. L. Hunt, Inc.*, 182 La. 1073; 162 So. 177, holding the tax a license rather than a property tax, consonant with both the state constitution and Fourteenth Amendment, the District Court granted a rehearing. The second opinion conceded the general validity of the act, but held it an undue burden on interstate commerce as applied to appellee.

[4] "Section 3. In addition to all other taxes of every kind imposed by law, every person, firm, corporation or association of persons engaged in the State of Louisiana in any business or occupation, which person, firm, corporation or association of persons uses in the conduct of such business or occupation, at any time, electrical or mechanical power of more than ten horsepower and does not procure all the power required in the conduct of such business or occupation from a person, firm, corporation or association of persons subject to the tax imposed by Section 1 or Section 2 of this act, shall be subject to the payment of an excise, license or privilege tax of One Dollar ($1.00) per annum for each horsepower of capacity of the machinery or apparatus, known as the 'prime mover' or 'prime movers', operated by such person, firm, corporation or association of persons, for the purpose of producing power for use in the conduct of such business or occupation; provided that any user of power securing all or any part of the power required in the conduct of the business or occupation of such user from a person, firm, corporation or association of persons subject to the tax imposed by Section 1 or Section 2 of this act, shall not be liable for the tax imposed by this Section 3, or for a greater tax under this Section 3, as the case may be, because of the employment of stand-by power facilities by such user during periods of failure of the supply of purchased power; and provided further that any person, firm, corporation or association of persons the principal use of whose electric facilities is the generation of electricity for sale, shall not be subject to an additional tax under

broad exemptions not assailed here, subjects the users of electrical or mechanical power, not procured from those subject to § 1 or § 2, to a tax of one dollar per annum for each horsepower of capacity of the machinery operated by the taxpayer for the purpose of producing this power. The state court has held that section three, here in question, does not lay a tax on those who own the machines but on those who use them in the conduct of their business, *State* v. *H. L. Hunt, Inc.,* 182 La. 1075, 1079-1080; 162 So. 777, a decision accepted, so far as the incidence of the tax is concerned, as a matter of local law conclusive on us. *St. Louis & S. W. R. Co.* v. *Arkansas,* 235 U. S. 350, 362; *Storaasli* v. *Minnesota,* 283 U. S. 57, 62. We regard the tax as one upon the privilege of producing the power.

*Second.* The language of the state statute makes it quite certain that this privilege tax falls alike on those engaged in interstate or in intrastate commerce, or in both. While a privilege tax by a state for engaging in interstate business has frequently met the condemnation of this Court as a regulation of commerce,[5] privilege taxes

this Section 3 on the horsepower capacity of any machinery or apparatus used in the generation of electricity; and provided further that in computing the tax imposed by this Section 3, there shall be excluded from the horsepower capacity of all machinery and apparatus operated, that part of such capacity used in a mechanical, agricultural or horticultural pursuit, or any other occupation exempt from a license tax under Section 8 of Article X of the Constitution of Louisiana, or in operating a sawmill or a mill for grinding sugarcane or producing raw sugar, or in conducting any business of selling electricity or any business conducted under any franchise or permit granted by the State of Louisiana or any subdivision thereof, or in propelling or motivating any automobile, truck, tug, vessel, or other self-propelled vehicle, on land, water or air."

[5] *Cooney* v. *Mountain States Tel. Co.,* 294 U. S. 384, 392, and cases cited in note four; *Puget Sound Stevedoring Co.* v. *State Tax Comm'n,* 302 U. S. 90; *Fisher's Blend Station* v. *State Tax Comm'n,* 297 U. S. 650; *Sprout* v. *South Bend,* 277 U. S. 163, 170, 175.

for "carrying on a local business," even though measured by interstate business, have been sustained. *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1;[6] cf. *Western Live Stock* v. *Bureau of Revenue, ante,* p. 250. The present case falls well within the line of state tax authority.

Taxation by the states of the business of interstate commerce is forbidden only because it is deemed an interference with that commerce, the uniform regulation of which is necessarily reserved to the Congress. *Minnesota Rate Cases,* 230 U. S. 352, 400. As this source of revenue, even if treated in a non-discriminatory manner, is withdrawn from local reach by inference from the delegated grant, the exemption of those engaged in interstate commerce from the taxation others bear should not be extended beyond the necessity of keeping that commerce free from interference. Consequently, property taxes on the instrumentalities or net income taxes on the proceeds of interstate commerce are upheld. *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321.

Privileges closely connected with the commerce may be regarded as distinct for purposes of taxation. So, local privilege taxes on storage in transit, compressing or dealing in cotton, already moving in its interstate journey from plantation to mill, are validated as imposed upon operations in connection with a commodity withdrawn from the transportation movement. *Federal Compress Co.* v. *McLean,* 291 U. S. 17, 21; *Chassaniol* v. *Greenwood,* 291 U. S. 584; cf. *Minnesota* v. *Blasius,* 290 U. S. 1. And similar taxes are upheld for the privilege of mining ores or producing gas, notwithstanding the "practical continuity" of the taxed productive operation and the interstate movement. *Oliver Iron Min. Co.* v. *Lord,*

[6] But see *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 296.

262 U. S. 172; *Hope Natural Gas Co.* v. *Hall,* 274 U. S. 284. In *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165, an Idaho statute taxing the generation of electricity at so much a kilowatt hour was upheld because a difference was perceived between the conversion of the mechanical energy of falling water into electrical energy and the transportation of the latter. The tax here imposed on the operation of the machinery is of the same type.

The power used by the appellee is obtained from internal combustion engines which transform the potential energy of natural gas into mechanical power, transmitted by piston and piston-rod from the combustion chamber of the engine to the compression chamber of the compressor. While the engine and compressor units are assembled on a common bed plate, their functions are thus seen to be as completely separate as if they operated through belting. The engine is the "prime mover" of the tax act, producing power to drive the compressor. While the use of the engine for the production of power synchronizes with the transmission of that power to the compressor, production occurs prior to transmission. It is just as much local as the generation of electrical power.

*Helson* v. *Kentucky,* 279 U. S. 245, *State Tax Commission* v. *Interstate Natural Gas Co.,* 284 U. S. 41, and *Cooney* v. *Mountain States Tel. Co.,* 294 U. S. 384, are pressed upon us as controlling authorities for the invalidation of the tax. We think they belong to the category of cases which construe the state tax acts involved as taxes on interstate commerce and its instrumentalities rather than on operations closely connected with but distinct from that commerce. In the *Interstate* case and the *Cooney* case taxes levied on the business of engaging in interstate commerce were held invalid. Likewise, in the *Helson* case, this Court concluded that the tax on gasoline brought into the state and used on an interstate ferry was analogous to a tax on the use of the ferry itself

in transit and therefore within the rule prohibiting state taxes on commerce. A narrow distinction in fact exists between the tax held invalid in the *Helson* case and the valid tax considered in *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, where a tax on gasoline brought into the state, stored and then used to drive engines in interstate transportation, was held valid. The storage and withdrawal was an intrastate, taxable event. See also *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, 252; *Gregg Dyeing Co.* v. *Query,* 286 U. S. 472, 479.

*Third.* To determine whether this challenged state tax enactment is invalid as an interference with interstate commerce under the decisions of this Court, the connection of the privilege taxed with interstate commerce has been considered. Other factors also show that the tax here does not interfere with interstate commerce. The tax is without discrimination in form or application as between inter- and intra-state commerce and it cannot be imposed by more than one state. The course of interstate commerce is clogged by taxes designed or applied so as to hamper its free flow. Section three, however, bearing equally on all use, is only complementary to the taxes of sections one and two. *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 584. It bears generally on all use of power and is not discriminatory. It obviously adds to the cost of the interstate commerce. But increased cost alone is not sufficient to invalidate the tax as an interference with that commerce. *Western Live Stock* v. *Bureau of Revenue, ante,* p. 254.

It was held by the District Court that this is a tax which may be levied by other states and so is invalid, and that a state's desire to save gas for its citizens may induce it to raise the privilege tax to prohibitory rates. It is true that each state through which a pipe line passes could lay a tax on the use of engines for the production of power, but that would not be multiple taxation

"merely because interstate commerce is being done," as discussed in *Western Live Stock* v. *Bureau of Revenue, ante,* p. 255, and the authorities there cited. It would not be a tax on the same activity, either in form or in substance. Like a property tax on the pipes or equipment in different states, it would be a different tax, on a different and wholly separate subject matter, with no cumulative effect caused by the interstate character of the business. It would not be multiple taxation for each state to tax the "booster station" *ad valorem* as property. Neither is it prohibited multiple taxation to have the possibility of other privilege taxes on the production of power. It is length of line, not interstate commerce, which makes another tax possible.

The decree of the District Court is

*Reversed.*

MR. JUSTICE McREYNOLDS is of the opinion the decree should be affirmed.

MR. JUSTICE CARDOZO took no part in the consideration or determination of this case.