306 U.S. 167
 59 S.Ct. 389
 83 L.Ed. 586
 SOUTHERN PAC. CO.
v.
GALLAGHER et al.
 No. 212.
 Argued Dec. 12, 1938.
 Decided Jan. 30, 1939.
 
 Mr. Harry H. McElroy, of San Francisco, Cal., for appellant.
 [Argument of Counsel from pages 168-169 intentionally omitted]
 Mr. H. H. Linney, of San Francisco, Cal., for appellees.
 Mr. Justice REED delivered the opinion of the Court.
 
 
 1
 The California Use Tax Act of 1935[1] is assailed as violative of the commerce clause and the Fourteenth Amendment, U.S.C.A.Const. art. 1, § 8, cl. 3; amend. 14, when imposed upon tangible personal property, bought outside of the state by the Southern Pacific Company, an interstate railroad, and installed on importation, or kept available for use, as a part of its transportation facilities.
 
 
 2
 The attack comes by means of a bill of the Southern Pacific Company seeking, before a three-judge district court,[2] an interlocutory and final injunction against the State Board of Equalization of California, its members and the Attorney General of the state, to restrain them from enforcing the Use Tax Act.[3] The trial court granted an interlocutory injunction and denied a motion to dismiss[4] but later refused a permanent injunction and sustained the motion to dismiss.[5] The case comes here by appeal.[6]
 
 
 3
 The Use Tax Act is complemental to the California Retail Sales Tax Act of 1933.[7] The latter levies a tax upon the gross receipts of California retailers from sales of tangible personal property; the former[8] imposes an excise on the consumer at the same rate for the storage, use or other consumption in the state of such property when purchased from any retailer. As property covered by the sales tax is exempt under the use tax, all tangible personalty sold or utilized in California is taxed once for the support of the state government. Definitions in the Use Tax Act of taxpayer, retailer, storage and use are designed to make the coverage complete. A retailer is 'every person engaged in the business of making sales for storage, use or other consumption'; use is the exercise of any right or power incident to ownership, except sale in the regular course of business; storage is any 'keeping or retention' with a similar exemption; and a taxpayer includes everyone 'storing, using or otherwise consuming' the property subject to the use tax.[9]
 
 
 4
 The principle of the use tax as applied to property brought into the state after its retail purchase for intrastate use has been upheld in Henneford v. Silas Mason Co.,[10] against the charge that it was a tax upon the operations of interstate commerce or a tax upon a foreign sale, violative of the Fourteenth Amendment. Under the Washington statute, there considered, discrimination against interstate commerce, arising from a second exaction for use after a foreign tax on sale, could not exist as provision was made for a credit against the local tax of any such foreign levy. No such problem arises here by evidence, finding or assignment of error[11] even though the California Act does not have this provision. It will be time enough to resolve that argument 'when a taxpayer paying in the state of origin is compelled to pay again in the state of destination.'[12] A discrimination against goods of out-of-state origin on the face of the sales and use acts is suggested because the local retailer may absorb the sales tax while the consumer of an imported article must pay the use tax.[13] But this is not a discrimination in the law. California's exaction for the distribution of tangible personal property is the same, whether purchased within or without her borders or whether paid by the retailer or consumer. There is an equal charge against what is used, whatever its source. In this case we have a distinctly different application of a use tax. The tax is not sought from personal property used in transactions entirely disassociated from any agency connected with interstate transportation, as builders' supplies for local work in the Silas Mason Case, but from tangible personalty purchased out of the state for immediate or subsequent installation in an interstate railway facility.
 
 
 5
 The appellant, the Southern Pacific Company, a Kentucky corporation, handles intrastate, interstate and foreign commerce over its railroad system which traverses a number of states and connects with the lines of carriers covering the continent. The findings and stipulation of facts show continual extrastate purchases of tangible personalty for the operation of the road; rails, equipment, machinery, tools and office supplies. Some of the purchases are used in the general offices of the corporation, located in California, for the supervision of the wide-flung activities; others are for material kept in readiness as a stand-by supply to replace or repair equipment damaged, destroyed or worn out in the operation of the road; and still others are to make improvements, replacements or extensions pursuant to previously determined plans and specifications. Few, if any, of the supplies are stored for long term needs. Storage is merely incidental to protection until use, as office supplies in a closet or an extra frog at a section tool house. For construction or reconstruction upon a large scale, special orders are given and arrangements made, so that the material is fabricated for a particular use in the transportation facilities, shipped to its California destination and installed upon arrival. To avoid delay and cost the movement from loading to final placement is as nearly continuous as managerial efficiency can contrive. While some articles are capable of general use, the major purchases of rails, repair parts and supplies for the maintenance and operation of the system are adapted only to railroad use. The purchases are paid for out of railroad operating capital and move on company material waybills, without transportation charge. All purchases may be said to be dedicated to consumption in the interstate transportation business of appellant. No new rolling stock is involved. Subsequent to repairing and reconditioning, rolling stock moves again in interstate transportation, as do cars after being stocked with supplies. The California tax on storage or use, it is said, cannot apply to these articles, as such a tax would be an unconstitutional burden upon the facilities of interstate commerce, of which the articles are a part.
 
 
 6
 There is agreement upon the principle involved. Appellant states that an excise tax imposed directly upon the privilege of using instrumentalities in carrying on interstate transportation is a direct and unconstitutional burden on commerce. Appellees do not dispute the premise but contend that the tax is on intrastate storage and use. They point to the definition of use as the exercise of a right of ownership, and of storage as any keeping or retention. By the definitive terms themselves, it is urged, the taxable events are retention and installation, not such storage as warehousing connotes, or use in the sense of consumption or operation. If we conclude retention and installation, under the circumstances here developed, are intrastate taxable events, viewed apart from commerce, we must still inquire whether taxes laid upon them are not, in effect, upon commerce, and forbidden.[14]
 
 
 7
 Two lines of authority aid in considering the effect of this tax on commerce. The first makes it quite clear that a state tax upon the privilege of operating in, or upon carrying on, interstate commerce is invalid. States cannot tax interstate telegraph messages,[15] or freight shipments.[16] A license tax on sales by samples burdens one selling only goods from other states.[17] A tax act as applied to the business of interstate communication[18] is unconstitutional. Where a similar levy by other states may be imposed, with consequent multiplicity of exaction on commerce for the same taxable event, local tax of a privilege, measured by total gross receipts from interstate transactions, is considered identical with an action on the commerce itself.[19] This rule is applicable to a tax on gross receipts from interstate transportation;[20] an occupation tax measured by gross receipts from radio broadcasting,[21] and a general tax at specified rates upon the gross income of every resident, construed as 'a tax upon gross receipts from commerce'[22] 'without apportionment.'[23] The measurement of a tax by gross receipts where it cannot result in a multiplication of the levies is upheld.[24]
 
 
 8
 Appellant selects from this line the Helson Case[25] as determinative of the contention that a tax on use of supplies or equipment is a tax on the commerce. A state tax of three cents per gallon was imposed on all gasoline 'sold at wholesale.' This phrase was defined to include gasoline bought out of the state and used within the state. There was no definition of the word use or used. The taxpayers operated an interstate ferry, purchased gasoline in Ohio and used that portion sought to be taxed in propelling their craft in the territorial waters of Kentucky. That court considered the tax on the consumption of the fas the same as a tax on the operation of the ferry boat and therefore invalid under the rule discussed in the preceding paragraph.
 
 
 9
 The second line of authority supports the view that use and storage as defined in the California act are taxable intrastate events, separate and apart from interstate commerce. A recent discussion of the topic sets out the precedents in support of a ruling that a tax upon the production of power by the use of which compressors drove natural gas in interstate commerce is valid. Such production is a taxable event distinct from its consumption in commerce.[26] Particular attention is called by the state to the Wallace Case.[27] There the tax was on 'selling or storing or distributing gasoline.' It became due on withdrawal from storage. The tax was held applicable to gasoline, purchased out of the state and stored in the state, when 'all is withdrawn and used * * * as a source of motive power in interstate railway operation' and valid against the objection that 'it is in effect a tax upon the use' in interstate commerce.[28] The invalidity of such a tax arises from a levy on commerce itself or its gross receipts, not upon events prior to the commerce.[29]
 
 
 10
 The principle illustrated by the Helson Case forbids a tax upon commerce or consumption in commerce. The Wallace Case, and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon 'use or storage,' no further inquiry is necessary as to the rest of the articles which are subjected to a rentention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively was effective. The interstate movement was complete. The interstate consumption had not begun. Champlain Realty Co. v. Brattleboro[30] and Carson Petroleum Co. v. Vial[31] are therefore inapplicable. Bacon v. Illinois,[32] where taxation of grain during stoppage in transit was validated, presents a closer analogy. 'Practical continuity' does not always make an act a part of interstate commerce.[33] This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant.[34] The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress.
 
 
 11
 But it is urged by the appellant that our former opinions make this conclusion a departure from precedent; the events are so close to or so inseparably intertwined with interstate commerce, as to be a part of it.[35] Cooney v. Mountain States Telephone Co.[36] is cited to show that a 'state excise tax cannot be validly applied indiscriminately and without apportionment to an instrumentality common to interstate and intrastate commerce.' The Telephone Company was taxed a sum on each telephone in use. As the instrument was employed part of the time in interstate commerce, this Court held the tax to be upon that commerce and invalid. Since there was no apportionment the entire tax fell. Unless the taxable events here, all of which are intrastate, are in effect a part of interstate commerce, our previous discussion of their separable character would render the Cooney Case inapplicable. For this point we are referred to Puget Sound Co. v. Tax Commission[37] and Ozark Pipe Line Corp. v. Monier.[38]
 
 
 12
 In the former case, the distinction in the opinion between stevedoring in loading and unloading interstate cargoes, held nontaxable as a burden upon commerce, and the business of supplying longshoremen for others to load and unload, held taxable as a local business is applicable here. The invalid tax in the Puget Sound Case was on the business of stevedoring, measured by a percentage of gross receipts from interstate activity. The valid tax was a similar percentage on the local activity as an employment agency. Here, under our analysis, we find only intrastate events taxed.[39]
 
 
 13
 In the Ozark Case, Missouri sought to justify a franchise tax on a company engaged in the operation of an interstate pipe line by suggesting the tax was upon certain intrastate events, such as operation of communications, repair and purchase of supplies. The tax was forbidden because on the privilege of doing an exclusively interstate business. The opinion is to be read in the light of the statement by the Court of its interpretation of the facts and legal deductions which control its decision. The Missouri Act called for a franchise tax of a percentage of the par of its stock, apportioned to its assets in that state. This Court said that 'the tax is one upon the privilege or right to do business,' and as the taxpayer 'is engaged only in interstate commerce' the tax 'constitutionally cannot be imposed.' There was then added this paragraph:
 
 
 14
 'The maintenance of an office, the purchase of supplies, employment of labor, maintenance and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the state, were all exclusively in furtherance of its interstate business, and the property itself, however extensive or of whatever character, was likewise devoted only to that end. They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business. The protection against imposition of burdens upon interstate commerce is practical and substantial and extends to whatever is necessary to the complete enjoyment of the right protected.'[40]
 
 
 15
 This Court pointed out that the corporation had a license to engage exclusively in interstate business.[41] The language just quoted shows that this Court interpreted the transactions in Missouri as merely a part of the interstate commerce and the tax on the franchise an interference therewith because a tax directly upon it.[42] '* * * nothing was done in Missouri except in furtherance of transportation.'[43] It was this conclusion of the Court on the factual situation which brought about the Ozark decision. Where there is also intrastate activity, an apportioned state franchise tax on foreign corporations doing an interstate business is upheld.[44] A franchise tax on an exclusively interstate business is a direct burden; proportioned to an intermingled business, it is valid.[45] Since the incidence of the California tax as here interpreted is upon events outside of interstate commerce, the Ozark opinion is not applicable. There the Missouri tax was upon activities found wholly interstate.
 
 
 16
 Finally, appellants urge that the tax violates the due process clause of the Fourteenth Amendment because exacted for consumption of office and car supplies outside the state, upon their appropriation in California by the general office to the use of the whole system.[46] This contention falls with the determination that the taxable event is the exercise of the property right in California. This Court declined to accept a similar argument in the Silas Mason Company Case.[47]
 
 
 17
 Affirmed.
 
 
 18
 Mr. Justice BLACK concurs in the result.
 
 
 19
 Mr. Justice ROBERTS took no part in the consideration or decision of this case.
 
 
 20
 Mr. Justice BUTLER.
 
 
 21
 Mr. Justice McREYNOLDS and I are of opinion that the judgment should be reversed.
 
 
 22
 The facts stated in the opinion just announced leave nothing of substance to support its conclusion that the California tax is not upon the operation—maintenance and use—of appellant's railroad for interstate transportation. Discussion can neither obscure nor more plainly disclose the truth that the tax in question directly burdens commerce among the States. Concededly, that is repugnant to the commerce clause as, from the beginning, it has been construed by this Court.
 
 
 
 [1]
 Cal.Stats.1935, ch. 361, p. 1297.
 
 
 [2]
 Sec. 266, Jud.Code, 28 U.S.C.A. § 380.
 
 
 [3]
 As the bill was filed July 10, 1936, there was jurisdiction. 50 Stat. 738, 28 U.S.C.A. § 41(1, 1a).
 
 
 [4]
 Southern Pac. Co. v. Corbett, D.C., 20 F.Supp. 940.
 
 
 [5]
 Id., D.C., 23 F.Supp. 193.
 
 
 [6]
 Sec. 266, Jud.Code, 28 U.S.C.A. § 380.
 
 
 [7]
 Cal.Stats.1933, ch. 1020, p. 2599, as amended, Cal.Stats.1935, chs. 351, 355, 357, pp. 1225, 1252, 1256.
 
 
 [8]
 California Use Tax Act, supra, Section 3.
 
 
 [9]
 Id., Sections 2, 3.
 
 
 [10]
 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814. Cf. Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. —-, decided this day.
 
 
 [11]
 People of State of New York v. Kleinert, 268 U.S. 646, 651, 45 S.Ct. 618, 619, 69 L.Ed. 1135.
 
 
 [12]
 Henneford v. Silas Mason Co., 300 U.S. 577, 587, 57 S.Ct. 524, 529, 81 L.Ed. 814.
 
 
 [13]
 National Ice & Cold Storage Co. v. Pacific Fruit Express Co., Cal.Sup., 79 P.2d 380.
 
 
 [14]
 Cf. Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439.
 
 
 [15]
 Western Union Telegraph Company v. Texas, 105 U.S. 460, 26 L.Ed. 1067.
 
 
 [16]
 Case of the State Freight Tax, 15 Wall. 232, 21 L.Ed. 146.
 
 
 [17]
 Robbins v. Shelby County Taxing District, 120 U.S. 489, 496, 497, 7 S.Ct. 592, 30 L.Ed. 694; Brennan v. Titusville, 153 U.S. 289, 14 S.Ct. 829, 38 L.Ed. 719.
 
 
 [18]
 Leloup v. Port of Mobile, 127 U.S. 640, 8 S.Ct. 1380, 32 L.Ed. 311.
 
 
 [19]
 See the discussion in Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272, decided January 3, 1939.
 
 
 [20]
 Philadelphia & S. Mail Steamship Co. v. Pennsylvania, 122 U.S. 326, 336, 7 S.Ct. 1118, 1119, 30 L.Ed. 1200.
 
 
 [21]
 Fisher's Blend Station v. Tax Comm., 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956.
 
 
 [22]
 Adams Mfg. Co. v. Storen, 304 U.S. 307, 311, 58 S.Ct. 913, 915, 82 L.Ed. 1365, 117 A.L.R. 429.
 
 
 [23]
 For comparison with sovereign immunity rule and reason for variation, see James v. Dravo Contracting Co., 302 U.S. 134, 157, 158, 58 S.Ct. 208, 219, 82 L.Ed. 155, 114 A.L.R. 318.
 
 
 [24]
 Western Life Stock v. Bureau of Revenue, 303 U.S. 250, 256, 58 S.Ct. 546, 549, 82 L.Ed. 823, 115 A.L.R. 944, and cases cited. Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604, 612, 58 S.Ct. 736, 740, 82 L.Ed. 1043; Ficklen v. Shelby County Taxing District, 145 U.S. 1, 12 S.Ct. 810, 36 L.Ed. 601; and American Mfg. Co. v. St. Louis, 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084, as explained in Gwin, White & Prince, Inc. v. Henneford, supra, and Adams Mfg. Co. v. Storen, supra, page 312, 58 S.Ct. page 916.
 
 
 [25]
 Helson & Randolph v. Kentucky, 279 U.S. 245, 49 S.Ct. 279, 73 L.Ed. 683; see also Bingaman v. Golden Eagle Lines, 297 U.S. 626, 56 S.Ct. 624, 80 L.Ed. 928.
 
 
 [26]
 Coverdale v. Pipe Line Co., 303 U.S. 604, 609, 58 S.Ct. 736, 738, 82 L.Ed. 1043.
 
 
 [27]
 Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 349, 77 L.Ed. 730, 87 A.L.R. 1191.
 
 
 [28]
 Id., pages 265, 266, 53 S.Ct. page 349; see Edelman v. Boeing Air Transport, 289 U.S. 249, 252, 53 S.Ct. 591, 592, 77 L.Ed. 1155; Gregg Dyeing Co. v. Query, 286 U.S. 472, 479, 52 S.Ct. 631, 634, 76 L.Ed. 1232, 84 A.L.R. 831.
 
 
 [29]
 Id., page 267, 53 S.Ct. page 349.
 
 
 [30]
 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309, 25 A.L.R. 1195.
 
 
 [31]
 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626.
 
 
 [32]
 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615.
 
 
 [33]
 Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929; Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049; Utah Power & L. Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038.
 
 
 [34]
 Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, 115 A.L.R. 944, and cases cited.
 
 
 [35]
 Cf. Henneford v. Silas Mason Co., 300 U.S. 577, 583, 57 S.Ct. 524, 527, 81 L.Ed. 814.
 
 
 [36]
 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934.
 
 
 [37]
 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68.
 
 
 [38]
 266 U.S. 555, 45 S.Ct. 184, 69 L.Ed. 439.
 
 
 [39]
 Under the commerce clause the regulatory power of the Congress is customarily exercised on transactions taken place within the state on the principle that such acts are an essential part of interstate commerce. See Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. —-, decided this day, and cases cited. Cf. Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210.
 
 
 [40]
 266 U.S. 555, 565, 45 S.Ct. 184, 186, 69 L.Ed. 439.
 
 
 [41]
 Id., page 567, 45 S.Ct. page 187.
 
 
 [42]
 Anglo-Chilean Corp. v. Alabama, 288 U.S. 218, 224, 53 S.Ct. 373, 374, 77 L.Ed. 710; Id., minority, page 236, 53 S.Ct. page 379; Virginia v. Imperial Coal Co., 293 U.S. 15, 20, 55 S.Ct. 12, 14, 79 L.Ed. 171.
 
 
 [43]
 Southern Natural Gas Corp. v. Alabama, 301 U.S. 148, 155, 57 S.Ct. 696, 699, 81 L.Ed. 970.
 
 
 [44]
 Id., page 156, 57 S.Ct. page 699.
 
 
 [45]
 See also Atlantic Lumber Co. v. Com'r, 298 U.S. 553, 556, 56 S.Ct. 887, 888, 80 L.Ed. 1328.
 
 
 [46]
 James v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Connecticut Gen. Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673; Frick v. Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Great Atlantic & Pacific Tea Company v. Grosjean, 301 U.S. 412, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293; International Paper Co. v. Massachusetts, 246 U.S. 135, 38 S.Ct. 292, 62 L.Ed. 624, Ann.Cas.1918C, 617.
 
 
 [47]
 Henneford v. Silas Mason Co., 300 U.S. 577, 578, 57 S.Ct. 524, 81 L.Ed. 814.