MICHIGAN WISCONSIN PIPE LINE COMPANY v STATE OF
MICHIGAN

1. CONSTITUTIONAL LAW—COMMERCE CLAUSE—INTERSTATE COMMERCE
   —TAXATION.

   The commerce clause of the United States Constitution forbids
   the burdening through taxation of interstate commerce or its
   essential instrumentalities (US Const, art 1, § 8).

2. TAXATION—USE TAX—NATURAL GAS—COMMERCE—CONSTITUTIONAL
   LAW—INTERSTATE COMMERCE.

   A use tax imposed upon the privilege of using, storing, and
   consuming tangible property brought from outside the state
   after it has come to rest does not apply to a quantity of natural
   gas which is transported into the state in a pipeline and
   withdrawn from the pipeline directly into compressor engines
   and consumed, thereby providing the power to run the com-
   pressors which power the flow of the gas through the pipeline;
   the gas thus consumed does not come to rest and it is a
   necessary integral part of interstate commerce, inseparable
   from the interstate transportation itself.

Appeal from the Court of Claims, William R.
Peterson, J. Submitted Division 2 May 15, 1974, at
Lansing. (Docket No. 17706.) Decided February 10,
1975. Leave to appeal applied for.

Complaint by the Michigan Wisconsin Pipe Line
Company against the State of Michigan and the
Michigan Department of Treasury for recovery of
use taxes paid. Judgment for plaintiff. Defendants
appeal by leave granted. Affirmed.

*Matheson, Bieneman, Veale & Parr,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 71 Am Jur 2d, State and Local Taxation § 244 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *James B. Saunders,* Assistants Attorney General, for defendants.

Before: DANHOF, P. J., and T. M. BURNS and CARLAND,* JJ.

CARLAND, J. The State of Michigan and the Michigan Department of Treasury, hereinafter referred to as defendants, hereby appeal from a judgment of the Court of Claims entered June 2, 1973, in favor of Michigan Wisconsin Pipe Line Company, a Delaware corporation, hereinafter referred to as claimant. By such judgment, the state was ordered to refund certain use taxes paid in the amount of $23,985.80 plus interest, which taxes had been levied upon the natural gas used by claimant as fuel in the operation of its compressor engines.

The case was submitted upon an agreed statement of facts which reflect that the claimant owns and operates a transmission pipeline for the transportation of natural gas purchased outside the State of Michigan for delivery to certain public utilities within that state. Upon the entry of such gas into the pipeline of claimant, its flow is uninterrupted from that point in time until its delivery in Michigan, the flow being powered by compressor engines located at intervals along the line. Two of such compressor stations are located in Michigan. The compressor engines are powered by natural gas taken directly from the pipeline itself via a tap line through which the gas flows directly to the engines and is immediately consumed. The agreed statement of facts contains the following stipula-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tion: "The gas consumed as compressor fuel does not come to rest after it leaves the pipeline and enters the compressor". The gas thus used is metered at the tap line and the volume so metered is that upon which the disputed tax is imposed.

Section 4 of the Use Tax Act provides that the tax levied shall not apply to:

"Property, the storage, use or other consumption of which, this state is prohibited from taxing under the constitution or laws of the United States, or under the constitution of this state." MCLA 205.94(b); MSA 7.555(4)(b).

The claimant asserts specifically that the gas which defendants seek to tax is in this case an integral part of a continuous flow in interstate commerce and is thus beyond the taxing power of the state as above provided. US Const, Art 1, § 8(3). No claim is here asserted that gas moving through the pipeline is in other than interstate commerce even after reaching the state of final distribution.

We must decide whether the act of withdrawal and consumption of gas from the claimant's interstate pipeline for the purpose of furnishing energy to power the compressor engines, which gas does not come to rest within this state, is a necessary integral part of interstate commerce. We conclude that it is.

Michigan courts have correctly characterized the incident of the use tax as the "privilege of using, storing and consuming tangible property brought from outside of the state after it has come to rest", *National Bank of Detroit v Department of Revenue,* 334 Mich 132; 54 NW2d 278 (1952); *Western Electric Co v Department of Revenue,* 312 Mich 582; 20 NW2d 734 (1945).

The commerce clause of the US Constitution forbids the burdening through taxation of interstate commerce or its essential instrumentalities. In *Helson v Kentucky,* 279 US 245; 49 S Ct 279; 73 L Ed 683 (1929), an Ohio River ferry boat serving Illinois and Kentucky used gasoline purchased in Illinois. Kentucky sought to tax that portion of the fuel consumed in that state. The Court held, 279 US 252; 49 S Ct 281; 73 L Ed 687:

"The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferry boat would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax, which falls directly upon the use of one of the means by which commerce is carried on, directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected."

It would appear that the tax on the natural gas here involved is of exactly the same nature as the tax sought to be imposed in *Helson, supra.* The gas was acquired outside of the State of Michigan and that portion needed for propulsion after entering this state was transported along the claimant's pipeline for that purpose. There is no apparent distinction between the gas so carried and made available as propulsion fuel and the gasoline carried in the storage tanks of a ferry boat for exactly the same purpose. In either case, the tax is upon the instrument of commerce.

Upon identical facts, it was so concluded in

*Texas Gas Transmission Corp v Benson,* 444 SW2d
137 (Tenn, 1969). There the Court found that
*Helson* controlled and said on page 139 as follows:

"It is then argued a 'taxable moment' occurred dur-
ing the interval of time from the separation of the fuel
gas from the mains to the compressor engines where it
was consumed. The undisputed proof is the fuel gas
does not come to rest after it leaves the mains and
enters the compressor engines. It is in a continuous flow
and never stops moving until consumed by the engines.

"Thus, fuel gas does not come to rest in this state nor
does it become a part of the mass of property within
this state. It furnishes energy to operate the compres-
sors which maintain the constant flow of gas through
this state in interstate commerce. It is, therefore, a
necessary and integral part of the interstate operation.

"The fuel gas being one of the means by which the
commerce is carried on, it is exempted from the use tax
under the statute."

Defendants vigorously maintain that *Helson* is
not applicable to the case at bar and assert that
the case is controlled by the decision in *Coverdale
v Arkansas-Louisiana Pipe Line Co,* 303 US 604;
58 S Ct 736; 82 L Ed 1043 (1938). *Coverdale* did not
impose a use tax on natural gas taken from an
interstate pipeline and used as a medium of pro-
pulsion, but rather as stated by the Court there
was there involved a tax imposing "a privilege tax
on the production of mechanical power * * * we
regard the tax as one upon the privilege of produc-
ing power." 303 US 605, 609; 58 S Ct 737, 739; 82
L Ed 1046, 1048. *Helson* was not overruled by
*Coverdale* but rather was affirmed and distin-
guished therefrom. In making such distinction, the
Court in *Coverdale* commented upon *Helson* and
other cited cases as follows:

"We think they belong to the category of cases which

construe the state tax acts involved as taxes on interstate commerce and its instrumentalities rather than on operations closely connected with but distinct from that commerce. In the *Interstate* case *[State Tax Commission v Interstate Natural Gas Co,* 284 US 41; 52 S Ct 62; 76 L Ed 156 (1931)], and the *Cooney* case *[Cooney v Mountain States Telephone & Telegraph Co,* 294 US 384; 55 S Ct 477; 79 L Ed 934 (1935)], taxes levied on the business of engaging in interstate commerce were held invalid. Likewise, in the *Helson* case, this Court concluded that the tax on gasoline brought into the state and used on an interstate ferry was analogous to a tax on the use of the ferry itself in transit and therefore within the rule prohibiting state taxes on commerce. A narrow distinction in fact exists between the tax held invalid in the *Helson* case and the valid tax considered in *Nashville, C & St L R Co v Wallace,* 288 US 249; 53 S Ct 345; 77 L Ed 730; 87 ALR 1191 (1933), where a tax on gasoline brought into the state, stored and then used to drive engines in interstate transportation, was held valid. The storage and withdrawal was an intrastate, taxable event." 303 US 611–612; 58 S Ct 740; 82 L Ed 1049–1050.

The defendants have cited no cases where, as in the instant case, that natural gas taken from an interstate pipeline while in transit and, without coming to rest, immediately consumed in furtherance of interstate commerce has been held to have been thus withdrawn from such commerce and has become a constitutionally permissible subject of state taxation. We are unable to perceive that a "taxable moment" occurs any time between the moment of withdrawal and the moment of consumption. We hold, as did the trial judge, the withdrawal of the gas to be factually inseparable from the interstate transportation itself.

We affirm without costs, a public question being here involved.