BALDWIN COMPANY, Appellant, v. GLANDER, Tax Commr., Appellee.

Board of Tax Appeals.

No. 10,301.   Decided April 12, 1946.

·Mr. William J. Rielly, Cincinnati, for the appellant.
Hon. Hugh S. Jenkins, Attorney General, and Daronne R. Tate, Assistant Attorney General, for the appellee.

## ENTRY

This cause and matter came on to be heard and considered by the Board of Tax Appeals upon an appeal filed by The Baldwin Company from two final orders of the tax commissioner, each of which denied an application theretofore filed by appellant for the review and correction of a corporation franchise tax certification made by the tax commissioner, one certification being with respect to additional taxes for each of the tax years 1940, 1941, 1942 and 1943, under the authority of §5461 GC, and the other being for the then current tax year 1944. Said cause was heard and submitted upon the transcript of the proceedings before the tax commissioner, the evidence and briefs of counsel.

Appellant is an Ohio corporation located in Cincinnati, the principal business of which has been the manufacture of pianos except when it did government work during the war. The Baldwin Piano Company is an Ohio corporation with its principal place of business in Cincinnati, and is in the business of selling all the products of appellant. Appellant does no selling except to the piano company and the piano company does no manufacturing. Appellant owns all of the shares of stock of the piano company except five qualifying shares owned by directors. Appellant is qualified to do business in no other state except Illinois where it formerly had factories which have since been sold. The piano company is qualified to do business in forty-one other states. The piano company has one retail branch store located in Ohio and dealers elsewhere in this state. The retail store of the piano company sends its orders for pianos to the appellant. The dealers send their orders to the piano company and the orders are then sent to the appellant which delivers the pianos ordered to the retail store or dealers on consignment, and when the dealers sell the pianos settlement for the payment thereof is made by the dealers with the piano company.

The piano company has ten retail stores called division offices in other states, which are in charge of local managers employed by the piano company. The piano company, through its division offices, sends orders to appellant and appellant

consigns to the piano company at its division offices the pianos ordered. When installment sales are made by the piano company the testimony shows that the following occurs:

"Sale to the retail customer, yes, that sale is entered in the sales record of the Baldwin Piano Co., the charge however to accounts receivable is not made actually on the books of the Baldwin Piano Co., instead it is made to an account which we refer to for accounting purposes as the Baldwin Co. current account, that is merely a clearing account, kind of inter-company account. Each month the Baldwin Piano Co. makes a report to the Baldwin Co. and the actual charge to accounts receivable is maintained on the books of the Baldwin Co. The individual accounts receivable with the individual customers are maintained at the branch store of the Baldwin Piano Co. The Baldwin Piano Co. does the collecting on those accounts. The actual accounts receivable control account is maintained on the books of the Baldwin Co."

When sales are made for cash the piano company receives the money.

Appellant charges the piano company a standard production cost, which is put upon the books of the appellant as a charge against the piano company. The manner of settlement between the two companies is described in the testimony as follows:

"If the Baldwin Co. required cash and find that the New York division office of the Baldwin Piano has more cash than it needs for its operation, the Baldwin Co. will ask for how much it needs for wants. The amount asked for will not necessarily have any relationship to the amount of pianos shipped to New York. The cash that is remitted by New York, Baldwin Piano to the Baldwin Co. will be applied first to this purchases account with the New York Division office of the Baldwin Piano. If by chance the account should be balanced out, in other words the purchases account should be paid in full, any excess cash would be credited to what we call 'Baldwin Piano Special Account.' The special account takes care of all inter-company transactions other than the shipment of pianos."

The difference between the selling price of pianos received by the piano company and the standard production cost charged to it by the appellant represents the piano company's

gross profit, which it retains for operating expenses. Any amount left represents its net profit, which goes to the appellant and is used in the declaration of a dividend, appellant being practically the sole shareholder.

The piano company also makes sales to its dealers in foreign states on consignment contracts. The dealers direct their requisitions to the piano company in Cincinnati or to the division offices of the piano company. Shipments to the dealers are made either by the division offices or from appellant's factory on the piano company's order. Consignment invoices are sent to the dealers by the piano company. If a dealer makes a cash sale of a piano he pays the piano company the wholesale price. In case of sales made on the installment plan, they are made on conditional sales contracts or are secured by chattel mortgages. The obligations for these sales are made payable to the dealer who may discount them at a bank and remit the wholesale price to the piano company or if they are turned over to the piano company for collection they are made payable to it. In the latter event the piano company will collect on these acounts until it receives the wholesale price, and then it returns to the dealers the evidences of indebtedness. The piano company guarantees to appellant the collection of all its time paper. Appellant has no warehouses and maintains no stocks of goods in any state other than Ohio.

Two questions are raised in this appeal. First, whether the tax commissioner was correct in finding for the purpose of computing the base upon which the franchise fee was computed, that in the determination of the "business done" fraction the value of all of appellant's business was done in Ohio; and second, whether he was correct in finding that in the determination of the "property" fraction all of its accounts receivable were owned or used by it in Ohio.

All of the fees based upon the returns of the appellant have been paid except the one for the year 1944 which amounts to $4,893.55. The additional assessments resulting from the allocation of appellant's business and property made by the tax commissioner are as follows: For the year 1940, $3,706.71; 1941, $4,375.93; 1942, $4,433.17; 1943, $3,377.35; and 1944, $515.15.

The evidence presented on behalf of appellant clearly shows that the appellant's business consisted of manufacturing pianos which it sold to its subsidiary, the piano company, an Ohio corporation and a separate entity; that the piano company sold said pianos throughout the various states. The evidence further shows that all of the business of appellant

was transacted in Ohio although it shipped pianos direct to the division offices and dealers of the piano company. The facts above set forth relate to the years herein involved.

Appellant claims that the tax commissioner erred in allocating all of its business to Ohio, whereas most of its sales were made in interstate commerce. The taxes in question are neither property nor income taxes. They are levied on the privilege of doing business in Ohio. Appellant is engaged only in the business of manufacturing, all of which is done in Ohio, and of selling its products to the piano company, an Ohio corporation. It is well settled that such company is doing all of its business in this state and that a franchise tax may be measured by all of its sales of products manufactured in this state regardless of whether or not they are sold in interstate commerce. In the case of American Manufacturing Company v St. Louis, 250 U. S., 459, 63 L. ed. 1084, the Court held:

"A municipal license tax upon the conduct of a manufacturing business in the city is not an unconstitutional regulation of interstate commerce merely because the amount of the tax is measured by the amount of sales of goods manufactured in the local factory, whether sold within or without the state, either in domestic or interstate commerce."

In the case of Coverdale v Arkansas-Louisiana Pipe Line Co., 303 U. S. 604, 82 L. ed. 1043, the Court said:

"While a privilege tax by a state for engaging in interstate business has frequently met the condemnation of this Court as a regulation of commerce, privilege taxes for 'carrying on a local business,' even though measured by interstate business, have been sustained."

The following was held in Alumium Company of America v Evatt, 140 Oh St, 385, 45 N. E. (2d) 118, 24 O. O., 405:

" 'Doing business' in this state is only a part of the privilege taxed under §5495 GC. The tax also covers the privilege of owning a part of all of the foreign corporation's capital or property in this state as well as the privilege of holding a certificate of compliance with the laws of this state.

"The Ohio Franchise Tax §5495 et seq., GC, is not a tax upon commerce, state or interstate. It is not a tax upon income, receipts or sales.

"The manufacturing operations within this state by a foreign corporation constitute business done by such corporation in this state within the meaning of §5498 GC."

This case was approved and followed in the case of **International Harvester Company v Evatt, 146 Oh St, 58, 31 O. O., 541,** in which the Court held:

"The operation of a factory in Ohio constitutes business done in Ohio regardless of where the products of such factory are sold (**Aluminum Co. of America v Evatt, Tax Commr, 140 Oh St., 385,** approved and followed)."

Rule No. 275 of the Tax Commissioner reads in part as follows:

"Business done in and out of Ohio * * * shall be determined under §5498 GC, by allocating to the business fraction * * *
"In the case of manufacturing companies, all sales of goods manufactured in Ohio, wherever sold, shall be considered Ohio sales, except sales of such products as are sold from warehouses outside of this State."

This rule is inapplicable here since the appellant had no warehouses or warerooms outside of Ohio. These were all owned or operated by the piano company, a separate entity. The fact that the shares of stock of the piano company were almost solely owned by the appellant can make no difference. The following was held in **North et al. v The Higbee Company, 131 Oh St, 507, 3 N. E. (2d) 391, 6 O. O. 166,** (writ of certiorari denied, 300 U. S. 655, 81 L. ed. 865):

"The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation will not be held liable for the acts and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant."

There is no contention here that the piano company was formed for the purpose of perpetrating any fraud. Even if that

were a fact, certainly the guilty corporation could not take advantage thereof. The Board, therefore, finds that the tax commissioner was correct in determining that 100% of appellant's business was done in Ohio.

With respect to the question of the situs of appellant's accounts receivable for the purpose of determining the numerator of the property fraction as provided for in §5498 GC, it is noted that appellant in its segregation of assets in the annual report of the company for each of the tax years here in question allocated as its own property in Ohio and outside of Ohio, respectively, the accounts and notes receivable which accrued to The Baldwin Piano Company on the sale by it to dealers and consumers of pianos which had theretofore been sold and delivered to The Baldwin Piano Company by the appellant. The tax commissioner, rightly entertaining the view that such accounts and notes receivable were not the proceeds of appellant's business but were the proceeds of the business of The Baldwin Piano Company in the sale by it of pianos manufactured by the appellant company (Board of Tax Supervisors v Baldwin Piano Company, 296 Ky., 673; 178 S. W. (2d) 212), eliminated such accounts and notes receivable from the reported assets of the company on his re-audit of the appellant company's several tax reports. In lieu thereof the tax commissioner on re-audit of appellant's tax reports for said several tax years set up as the accounts receivable of appellant for the purpose of determining the numerator of said property fraction the particular accounts receivable appearing on the books of the appellant company as charges made by it against The Baldwin Piano Company for the production cost of pianos delivered by the appellant company to the piano company; and as to each of said tax years the amount of the accounts receivable set up by the tax commissioner was such receivables appearing on the books of the company on and as of December 31 of the year immediately preceding the particular tax year in question. Sec. 5498 GC, provides, **inter alia:**

"In determining the amount or value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign corporation the commission (commissioner) shall be guided by the provisions of §§ 5328-1 and 5328-2 GC * * *."

**Sec. 5328-1 GC,** reads in part as follows:

"All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation, excepting as provided in this section or as otherwise provided or exempted in this title; * * * Property of the kinds and classes mentioned in §5328-2 GC, used in and arising out of business transacted in this state by, for or on behalf of a non-resident person, other than a foreign insurance company as defined in §5414-8 GC, and non-withdrawable shares of stock of financial institutions and dealers in intangibles located in this state shall be subject to taxation; and all such property of persons residing in this state used in and arising out of business transacted outside of this state by, for or on behalf of such persons, and non-withdrawable shares of stock of financial institutions located outside of this state, belonging to persons residing in this state, shall not be subject to taxation."

**Sec. 5325-1 GC,** contains the following definition of the term "used in business":

"* * * Moneys, deposits, investments, accounts receivable and prepaid items, and other taxable intangibles shall be considered to be 'used' when they or the avails thereof are being applied, or are intended to be applied in the conduct of the business, whether in this state or elsewhere. * * *"

It cannot be contended that the accounts receivable of appellant or the avails thereof were not applied to the conduct of appellant's business. The question remains as to whether they arose out of business transacted in other states within the meaning of §5328-2 GC. This section reads in part as follows:

"Property of the kinds and classes herein mentioned, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner thereof resides in the cases and under the circumstances following:

"In the case of accounts receivable, when resulting from the sale of property sold by an agent having an office in such other state or from a stock of goods maintained therein, or from services performed by an officer, agent or employe con-

nected with, sent from, or reporting to any officer or at any office located in such other state."

Under §5328-1 GC, all intangible property of a person residing in this state is subject to taxation except as otherwise provided. Under §5328-2, GC, accounts receivable owned by a resident resulting from sales must, in order not to be subject to taxation, result from sales by an agent having an office outside of this state or be made from a stock of goods maintained outside of Ohio.

The evidence in this case clearly shows that the appellant had no agents or officers outside of Ohio and kept no stocks of goods outside of Ohio. The agents outside of Ohio were the agents of the piano company, a separate corporation. A very similar situation is presented in the case of **The Ohio Match Company v Evatt, 24 O. O., 91, 36 Abs. 414,** 9 Ohio Supp. 35, decided by this Board. In fact, the present case is stronger for taxability than that case. In that case the manufacturing company was a foreign corporation and the sales company was a domestic corporation. In this case both companies are Ohio corporations. As in that case, it is here contended by appellant that the tax commissioner should disregard the corporate entity of the sales company and should have regarded the subsidiary sales company as an agent or instrumentality of appellant and in the same manner as if the sales to the trade had been made by the appellant and not by the piano company, and that sales made by the piano company from warerooms maintained by it outside of the state to points outside of Ohio, and the accounts receivable resulting therefrom should be allocated outside of Ohio. The syllabus in that case reads as follows:

"In the absence of fraud or a purpose to effect the same, the separate corporate entities of a parent and subsidiary corporation will not be disregarded notwithstanding the fact that the subsidiary corporation is controlled by the parent through its stock ownership, and notwithstanding the further fact that the officers and directors of the parent corporation are likewise officers and directors of the subsidiary corporation.

"The provisions of §5379 GC, relating to the elimination of inter-company accounts, do not apply in the determination and assessment of corporation franchise taxes.

"Where a foreign corporation at its plant in Ohio manufactured matches and other products which were sold through an Ohio corporation, its wholly owned subsidiary, the tax com-

missioner in determining the taxable valuation of the foreign corporation's issued and outstanding stock represented by the property owned and business done by the corporation in Ohio, and in determining the consequent amount of franchise taxes to be paid by the foreign corporation, did not err in including as Ohio business of the corporation sales made to its subsidiary, and did not err in including as property owned by the foreign corporation in Ohio accounts or notes receivable accruing to the foreign corporation from sales of its products to its subsidiary."

All of the accounts receivable of the appellant company accruing to it on the sale and delivery of pianos to The Baldwin Piano Company were allocated by the tax commissioner to the State of Ohio; and inasmuch as the transactions in and by which such accounts receivable accrued occurred in this state, it would seem to follow that such allocation was correctly made.

With respect to the suggestion that The Baldwin Piano ■ Company in the sale of pianos to dealers and consumer was only an agent of the appellant company in the sale and distribution of pianos manufactured by it, it is observed that there is nothing in the evidence in this case with respect to any contract between the appellant company and The Baldwin Piano Company whereby the latter company was made a factor or other agent of the appellant for the sale and distribution of such pianos as the property of the appellant company or otherwise. And the view that such agency relation was not created by the fact that The Baldwin Piano Company was and is the wholly owned subsidiary of the appellant company is supported by the decision of the Court of Appeals of Kentucky in the case of the Board of Tax Supervisors, supra, and by like decisions in this and other states of the Union.

Under the evidence in this case the Board finds that the accounts receivable of the appellant herein involved did not result from the sale of property sold by any agent of the appellant having offices outside of the state or from a stock of goods maintained outside of Ohio and, therefore, are subject to taxation in this state. It is, therefore, by the Board of Tax Appeals considered and ordered that the orders of the tax commissioner complained of in this appeal be, and the same hereby are, affirmed.