

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 10, 1959

Hon. V. L. Ramsey, Chairman
Revenue & Taxation Committee
House of Representatives
Austin, Texas

Opinion No. WW-592

Re: Constitutionality of H.B.
No. 43, 56th Legislature,
levying a tax to be known
as the "Severance Benefi-
ciary Tax."

Dear Mr. Ramsey:

Your committee has requested the opinion of this office as to the constitutionality of House Bill No. 43, levying a tax to be known as a severance beneficiary tax, particularly with reference to the constitutionality of the bill insofar as it affects gas transmission lines, both long lines and those involved in interstate commerce.

House Bill No. 43 is lengthy, consisting of 12 pages, and most of the provisions therein contained are similar in form to those contained in Article 7047b, Vernon's Civil Statutes, which provides for an occupation tax on the production of natural gas in Texas. Therefore, the question of the constitutionality of House Bill No. 43 will be confined to those sections of the act providing for the taxation of the production of dedicated gas to be paid by the severance beneficiary.

Section 1(1) of the act provides that in addition to the occupation tax on producers of natural gas now levied under the provisions of Article 7047b, V.C.S., there is levied an occupation tax on the occupation or privilege of obtaining the production of dedicated gas within this State, and on the business or occupation of producing such gas, to be known as the "Severance Beneficiary Tax," the tax being based on a percentage of the market value of the gas produced at the well.

Section 1(4) states that the tax hereby levied is "an occupation tax on the occupation or privilege of obtaining the production of 'dedicated gas' and on the business or occu- pation of producing such gas as a 'severance beneficiary,' as those terms are defined herein."

Section 1(5) provides that the tax shall be a liabil- ity of the producer of the gas, but if produced for or sold to

a severance beneficiary <u>other than the producer</u>, the tax shall be paid by the severance beneficiary, but that the liability of the producer shall end only upon the payment of the tax by the severance beneficiary, and until such time both the producer and the severance beneficiary shall be jointly liable for payment of the tax. Where gas is sold to a severance beneficiary and reported to the Comptroller of Public Accounts as provided in the act, the producer shall never be required to pay the tax unless the severance beneficiary fails to do so or is held by a final court order not to be liable therefor.

Section 1(6) provides that the first purchaser of gas shall pay the tax on the gas so purchased, and unless he is the severance beneficiary, the tax so paid shall be deducted from the payment due the producer.

Section 2 of the act, defining terms, is identical with the provisions of Section 2, Article 7047b, with the following exceptions:

"(1) For the purpose of this Act, 'producer' shall mean any person (other than a non-operating royalty owner) owning, controlling, managing, or leasing any gas well or land producing gas, and any person who produces in any manner any gas by taking it from the earth or waters in this State.

"(2) 'First Purchaser' shall mean any person purchasing gas from the producer or from a severance beneficiary. In the event there is no 'first purchaser' or severance beneficiary, then the producer shall be deemed the purchaser and pay the tax levied by this Act.

"(3) 'Dedicated Gas' shall include all gas produced and saved in this State covered by any purchase contract, option, or agreement by which gas is to be produced for, sold to, or used by a severance beneficiary, as herein defined, or gas produced and saved by the producer thereon when there is no other severance beneficiary.

"(4) 'Severance Beneficiary' shall mean any person for whom gas is produced and to whom it is first sold by the producer under a dedication contract or under any other agreement of sale made prior to the production thereof under which a person acquires dedicated gas reserves in this State or exclusive or beneficial rights in gas under the

earth or waters of this State.  A person purchasing gas pursuant to such a contract shall be deemed to be engaged in obtaining the production of dedicated gas in this State, which is a valuable occupation or privilege for which this tax is levied; provided, however that a producer producing gas for his own use or for sale and not subject to a contract as described above, shall be considered a severance beneficiary for the purpose of this Act."

Construing the foregoing definitions with the provisions of Section 1, sub-sections (1) through (8), it is apparent that House Bill No. 43 is an act levying an occupation tax upon the occupation or privilege of obtaining the production of gas produced and saved in Texas, which is subject to any purchase contract, option, or agreement, under the terms of which the gas is to be produced for, sold to, or used by any person for whom the gas is produced and to whom it is first sold by the producer under the contract or agreement of sale made prior to the production of the gas, and by which such person acquires gas reserves or the exclusive or beneficial rights in gas under the earth or waters of this State.

Under the terms of House Bill No. 43 a person for whom such gas is produced, or who has the right to produce or acquire such gas, is engaged in a valuable occupation or privilege which constitutes the basis for the levy of the tax upon such occupation or privilege.  If the severance beneficiary upon whom the tax is primarily levied is also the producer, then the tax so levied is a tax levied upon the production of such gas in addition to the original production or severance tax levied under the provisions of Article 7047b, V.C.S.

The tax levied under House Bill No. 43 is a privilege or occupation tax upon the producer of natural gas calculated according to the value of the gas so produced at the well, Hope Natural Gas Co. v. Hall, 274 U.S. 284 (1926), and since it does not enter into interstate commerce until it has been produced, and the tax imposed thereon is only in respect to the production, no discrimination against interstate commerce is involved. Oliver Iron Co. v. Lord, 262 U.S. 172 (1922); Utah Power & Light Co. v. Pfost, 286 U.S. 165, 182 (1931).  The tax is an occupation or privilege tax which falls alike on those engaged in interstate commerce or in intrastate commerce, or both, and therefore does not violate the Commerce clause of the Constitution of the United States. Coverdale v. Pipeline Co., 303 U.S. 604, 610 (1938).

Since the incidence of the tax is based solely upon the occupation or privilege of the production of "dedicated gas" from the earth or waters of this State by a "severance beneficiary," as those terms are defined, irrespective of the ultimate disposal of the gas so produced--whether in intrastate or interstate commerce--it is purely local in nature and therefore not violative of the Commerce clause of the Federal Constitution, Hope Natural Gas Co. v. Hall, supra.

House Bill No. 43 is not subject to the constitutional objections raised in Michigan-Wisconsin Pipeline Co. v. Calvert, 347 U.S. 157 (1953), wherein the Supreme Court of the United States held that the "gas gathering" tax was violative of the Commerce clause of the Federal Constitution for the reason that the taxable event or incident which formed the basis for the tax was "not levied on the capture or production of the gas, but rather on its taking into interstate commerce after production, gathering, and processing. . ." Nor is the tax levied by House Bill No. 43 subject to the additional objection stated by the Court in the "gas gathering" case that it would permit a multiple burden upon interstate commerce, since the taxable incident, i.e., the production of the gas, is a purely local incident which cannot be the subject of repeated tax exactions in other states, Coverdale v. Pipeline Co., 303 U.S. 612.

In Section 1(5), which provides that the tax levied upon the occupation or privilege of obtaining the production of dedicated gas should be paid by the severance beneficiary, it is further provided that:

". . . In no event shall the severance beneficiary deduct, charge, or collect the tax hereby levied from his payments to the producer, and no contract or agreement heretofore or hereafter made shall be interpreted as requiring the producer to pay any portion of the tax which is the liability of the severance beneficiary under the provisions of this Act. It is hereby declared to be against the public policy of this State, and to contribute to economic and actual waste, and to be an unlawful limitation upon the conservation and taxing powers of the State of Texas, for any contract to require the producer to pay the severance beneficiary tax hereby levied when there is a severance beneficiary as defined herein other than the producer himself; it being the intention of this Act that the producer shall be required to pay the tax hereby levied only if the gas is produced for his own use or independent sale and not under any prior contract to produce for sale to another, or if the severance

beneficiary is declared by final court judgment
not to be liable for the tax hereby levied. . . ."

Based upon the above quoted provisions of Section
1(5), declaring it to be the public policy of this State and
to contribute to economic or actual waste and a limitation
upon the conservation powers of the State for any contract to
require the producer to pay the tax levied upon the severance
beneficiary, the power of the State to enact legislation for
the prevention of economic and physical waste of natural gas
as against the contention that such legislation violated the
due process and equal protection clauses of the Fourteenth
Amendment of the Constitution of the United States, was upheld
in Cities Service Gas Co. v. Peerless Oil & Gas Co., 203 Okla.
35, 220 P.2d 279, 289 (1950), aff'd 340 U.S. 179, 185 (1950).
The Oklahoma statute provided that the Oklahoma Corporation
Commission was empowered to fix the price paid to the produc-
ers for gas taken at the well, because the taking of gas at
the prevailing price resulted in both economic and physical
waste of gas and loss to the producers and loss to the State
in gross production taxes, and the constitutionality of such
statute was sustained by the Supreme Court of Oklahoma and the
Supreme Court of the United States.

The provision that the severance beneficiary may
neither deduct, charge, or collect the tax from his payment to
the producer, and that no contract or agreement heretofore or
hereafter made shall be interpreted to as to require the pro-
ducer to pay all or any part of the tax for which the severance
beneficiary is primarily liable under the provisions of the act,
does not impair the obligation of a contract in violation of
Article I, Section 16, Constitution of Texas, or Article I,
Section 10, Constitution of the United States, Henderson Co. v.
Thompson, 300 U.S. 258, 266 (1936).

The tax imposed by House Bill No. 43 is a production
or severance tax based upon the occupation of producing gas
from the earth and waters of this State prior to its entry into
either intrastate or interstate commerce, and irrespective of
the ultimate destination of the gas so produced, the fact that
it may be subsequently transported through pipelines which are
engaged in either interstate or intrastate commerce, or both,
does not affect the constitutionality of the act itself.

It is the opinion of this office that the provisions
of House Bill No. 43 which levy an occupation tax upon the occu-
pation or privilege of obtaining the production of dedicated gas
within this State, and on the business and occupation of produc-
ing such gas to be paid by the severance beneficiary or the

producer thereof, do not violate the due process and equal protection clauses of Article I, Sections 16 and19, Constitution of Texas,and Section I of the Fourteenth Amendment to the Constitution of the United States, or impair the obligation of contracts in violation of Article I, Section 16, Constitution of Texas, and Article I, Section 10, Constitution of the United States. Since the tax is levied upon the production of gas within the State of Texas, the fact that when produced such gas may be transmitted through pipelines for final disposition in either interstate or intrastate commerce does not violate Article I, Section 8, Clause 3, the Commerce clause of the Constitution of the United States.

## SUMMARY

House Bill No. 43 which levies an occupation tax on the occupation or privilege of obtaining the production of dedicated gas within this State, and on the business and occupation of producing such gas to be paid by the severance beneficiary or the producer thereof, does not violate the due process and equal protection clauses or impair the obligations of contracts under the provisions of the Constitution of Texas and the Constitution of the United States, nor does it violate the provisions of the "Commerce clause" of the U.S. Constitution.

Yours very truly,

WILL WILSON
Attorney General of Texas

By C. K. Richards
Assistant

CKR:wb

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman
Fred Werkenthin
John Reeves
Jack Price

REVIEWED FOR THE ATTORNEY GENERAL

BY:  W. V. Geppert