[S. F. No. 19777. In Bank. Dec. 23, 1958.]

### E. SUGARMAN, Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman and Eugene B. Jacobs, Deputy Attorneys General, for Appellant.

Walter E. Drobisch for Respondent.

SHENK, J.—This is an appeal from a judgment for the plaintiff in an action for the refund of $3,206.83, an amount paid under protest as use tax, penalties, and interest.

The plaintiff is a resident of San Francisco. In January 1953, after personal negotiations in Europe and by mail from San Francisco, the plaintiff entered into a contract with an Amsterdam ship builder for the construction of a motor yacht. The yacht was to be built in Amsterdam for an agreed price of $65,000. Machinery of a value of $16,340.23 was purchased by the plaintiff from a Michigan manufacturer through its agent in Berkeley, California. The machinery was shipped directly from Michigan to Amsterdam. Fittings were purchased by the plaintiff in San Francisco and shipped to Amsterdam for installation. No state or local taxes were paid on the machinery or fittings.

On October 25, 1953, the plaintiff took delivery of the yacht at Amsterdam. The yacht was tested by him and on November 5, 1953, he delivered it to a freighter at Rotterdam for shipment to San Francisco. The yacht was enclosed in protective coverings and crating. The plaintiff's own skipper accompanied the yacht on the voyage to San Francisco.

On December 7, 1953, the plaintiff paid $9,413.40 to the United States Collector of Customs at San Francisco. The trial court found that "The yacht with its machinery, equipment, and engines which had been installed therein by the shipbuilder in Holland, was on its arrival in San Francisco, California on December 9, 1953, in the identical condition so far as protective coverings, cratings, and devices are concerned as it was when prepared for shipment at the commencement of its journey at Rotterdam, Holland and it arrived in San Francisco, California in the original package in which it was shipped from Rotterdam, Holland, and remained in such original package for a period of twenty-four hours until its unloading at San Francisco could be arranged and accomplished. On December 10, 1953, the yacht was removed from its protective coverings, cratings, devices, and original package and lifted from the sea-going freighter into the San Francisco Bay. Sugarman immediately piloted the yacht under its own power to a berth in Sausalito, Marin County, California. The yacht, with its machinery, equipment, and engines, has remained since that day in California and has been berthed and used in California from that day to the date of trial."

In October, 1954, the Board of Equalization made a determination of use tax, interest, and penalties for the use of the yacht during the period December 1, 1953, to December 31, 1953. A determination of taxes owing for the use of the machinery during the period October 1, 1953, to December 31, 1953, interest, and penalties was made on June 2, 1955. Upon exhausting his administrative remedies the plaintiff brought this action in the superior court to recover the amount paid under protest to the defendant State Board of Equalization.

The California use tax law is contained in section 6201 et seq. of the Revenue and Taxation Code. Section 6201 provides: "An excise tax is hereby imposed on the storage, use, or other consumption in this State of tangible personal property purchased from any retailer on or after July 1, 1935, for storage, use, or other consumption in this State at the rate of 3 percent of the sales price of the property, and at the rate

of 2½ percent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent thereafter.''

Section 6202 provides: ''Every person storing, using, or otherwise consuming in this State tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this State except that a receipt from a retailer maintaining a place of business in this State or from a retailer who is authorized by the board, under such rules and regulations as it may prescribe, to collect the tax and who is, for the purposes of this part relating to the use tax, regarded as a retailer maintaining a place of business in this State, given to the purchaser pursuant to Section 6203, is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers.''

By the express provisions of section 6201, that tax could not apply until ''storage, use, or other consumption'' of the vessel occurred within the borders of this state. A further limitation upon the imposition of the tax provided in section 6201 appears in section 6352 of the Revenue and Taxation Code where it is provided: ''There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this State of tangible personal property the gross receipts from the sale of which, or the storage, use, or other consumption of which, this State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State.''

Thus, by the express provisions of the act, two inquiries are pertinent to determine whether the tax was here lawfully and validly imposed: first, it must be determined that the property was so utilized as to subject it to the provisions of the act; second, it must appear that the tax is not prohibited by the ''Constitution or laws of the United States or under the Constitution of this State.''

The contention that the yacht was used within this state is conclusively supported by the evidence. The plaintiff testified that the yacht was not used for pleasure cruises until about six months after it was brought into California because of Mrs. Sugarman's illness and the making of certain changes in the masts and lights as required by an amendment of federal law regulating navigation lights. At the trial, the plaintiff was asked: ''Q. You stated it took two months to get it in shape? You stated it was six months before you used it for pleasure cruises. What happened in the intervening four

months? A. It just laid there. Q. It laid at berth in Sausalito? A. Yes. The skipper lived on board and that is all there was to it. Q. And that yacht is still in your possession and ownership? A. Yes. Q. And has been used as you pleased since bringing it to California? A. Yes."

The period for which the use tax was assessed included the time during which the yacht and its equipment were beyond the borders of this state; a time when it was on board the freighter in the San Francisco Bay in its original covering and crating, and a time when it was, as found by the trial court, used by the plaintiff within the State of California.

■ The defendant seeks to tax only the use of the vessel and its machinery within this state after its movement in foreign commerce had ceased, and its crating and protective covering had been removed. Such use comes within the express provisions of section 6201 of the Revenue and Taxation Code.

The plaintiff contends that the tax was unconstitutional as applied because the yacht and its machinery were immune from state taxation under article I, section 10, clause 2 of the federal Constitution, the import-export clause. That clause provides: "No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any State on imports or exports, shall be for the use of the Treasury of the United States; and all such laws shall be subject to the revision and control of the Congress."

■ The single exception stated in the import clause is exclusive; no further exceptions can be implied. (*Richfield Oil Corp.* v. *State Board of Equalization,* 329 U.S. 69, 76 [67 S.Ct. 156, 91 L.Ed. 80].) The board does not contend that the tax comes within that exception; its position is that the yacht lost its exempt status as an import when it was uncovered, uncrated, and put to the use for which it was imported. ■ The immunity of foreign commerce from the imposition of imposts and duties is not the same as the exemption of goods moving in interstate commerce. Tests of constitutional validity under the commerce clause do not control the result of cases arising under the import clause. (*Richfield Oil Corp.* v. *State Board of Equalization, supra,* 329 U.S. at p. 75.)

■ Goods imported into the United States from a foreign country are not permanently exempted from state and local

taxes. "There must be a point of time when the prohibition ceases, and the power of the state to tax commences." (*Brown* v. *Maryland,* 12 Wheat. (U.S.) 419 [6 L.Ed. 678].) Property which has not been mingled with the general property within a state or devoted to the use for which it is imported from abroad is exempt from state taxes. The line separating imports from property subject to state taxation was drawn in *Brown* v. *Maryland, supra,* 12 Wheat. (U.S.) 419 at pages 441, 442: "It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution." (See also *Hooven & Allison Co.* v. *Evatt,* 324 U.S. 652 [56 S.Ct. 870, 89 L.Ed. 1252] [ad valorem property taxes].) In traffic between the several states, the taxable event may occur when the goods are stored for use within a state. (*Southern Pacific Co.* v. *Gallagher,* 306 U.S. 167 [59 S.Ct. 389, 83 L.Ed. 586] . [California use taxes].) The plaintiff contends that the Richfield Oil case, *supra,* and *Matson Nav. Co.* v. *State Board of Equalization,* 136 Cal.App. 2d 577 [289 P.2d 73] support his claim for a refund. Both cases hold the California sales tax inapplicable to goods which have begun to move in foreign commerce as exports at the time of the sale. The crucial distinction between those cases and the present case is not that they involve exports and the present case an import; it is that at the time of the sale, the goods in those cases were committed to the channels of export. All goods destined for export are not, however, exempt from state taxation. (*Joy Oil Co.* v. *State Tax Commission of Michigan,* 337 U.S. 286 [69 S.Ct. 1075, 93 L.Ed. 1366] [ad valorem property tax]; *Empresa Siderurgica* v. *County of Merced,* 337 U.S. 154 [69 S.Ct. 995, 93 L.Ed. 1276] [personal property tax].) We cannot, as is asserted by the plaintiff, decide this case by assuming that if the Richfield and Matson cases had involved imports and the imposition of use taxes instead of sales taxes, the tax would have been declared unconstitutional. The decisions of the United States Supreme Court in the Joy Oil and Empresa cases above cited, *Brown* v. *Maryland, supra,* and its reasoning in *Hooven &*

*Allison, supra,* enjoin upon us the duty to determine whether the property sought to be taxed remained an import at all times after its entry into this state and if it did not, to decide whether the tax was applied after the termination of the yacht's exempt status as an import.

The most recent review by the United States Supreme Court of the power of state or local governments to tax goods originating from abroad, appears in *Hooven & Allison Co.* v. *Evatt, supra.* There, the State of Ohio sought to impose an ad valorem tax upon bales of fibers imported from foreign countries and the Philippine Islands, then a possession of the United States. The bales were stored in the taxpayer's warehouse awaiting use in his manufacturing business. After deciding that the plaintiff was an importer within the meaning of the import clause, the court considered the duration of the immunity of such imported goods from local taxation. It was held that the bales were ''original packages'' as defined by *Brown* v. *Maryland, supra,* and the exaction was declared unconstitutional. The language of that opinion is pertinent here in distinguishing between imports in the constitutional sense and goods which have lost their exemption from taxation by use (*Hooven & Allison Co.* v. *Evatt, supra,* 324 U.S. 652 at pp. 664, 665) : ''The reason for the original package doctrine, as fully expounded in *Brown* v. *Maryland, supra,* is that unless the immunity survives to some extent the arrival of the merchandise in the United States, the immunity itself would be destroyed. For there is no purpose of taxing importation, itself, even its ultimate suppression, which could not be equally accomplished by laying a like tax on things imported after their arrival and while they are in the hands of the importer.

 ''On the other hand the immunity is adequately protected and the state power to tax is adequately safeguarded if, as has been the case ever since *Brown* v. *Maryland, supra,* an import is deemed to retain its character as such 'while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported,' see *Brown* v. *Maryland, supra,* 12 Wheat. 442, 6 L.Ed. 678, or until put to the use for which it was imported. Chief Justice Marshall, in *Brown* v. *Maryland, supra,* 12 Wheat. at pages 442, 443, 6 L.Ed. 678, rejected the suggestion that 'an importer may bring in goods, as plate, for his own use, and thus retain much valuable property exempt from taxation.' Plainly if and when removed from the package in which they

are imported or when used for the purpose for which they are imported, they cease to be imports and their tax exemption is at an end. It is quite another matter to say, and Chief Justice Marshall did not say, that because they may be taxed when used, the importer may not hold them tax free until the original packages are broken or until they are put to the use for which they are imported. He said, 12 Wheat. at page 443, 6 L.Ed. 678: 'The same observations [i.e., the importer has mixed the goods with the common mass of property, rendering them taxable] apply to plate, or other furniture *used* by the importer.' (Italics added.)''

It is clear that had a sales tax been imposed on the transaction, it would have been unconstitutional under the import clause. The tax would have intercepted the plaintiff's yacht upon entering the country in its original package and before it was put to the use for which it was purchased. It is also clear that under the tests announced in the Hooven & Allison decision, the yacht was subject to any applicable state and local ad valorem property taxes after the removal of the crating and protective covering and use by the plaintiff.

In *Southern Pacific Co.* v. *Gallagher, supra,* 306 U.S. 167, the court stated at page 177: ''We think there was a taxable moment when the former [goods] had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective.'' It is contended that the Supreme Court, by declaring the goods shipped in from a sister state and stored for use in California were subject to the California use tax has fixed a moment at which the use tax attaches and to which we must refer to determine the validity of the tax here involved. It is urged that because the tax attached to stored goods in the Southern Pacific case, the ''taxable moment'' at which it applied to the plaintiff's yacht was when it entered this state in its covering and crates, and that it ended when it was uncovered, uncrated and lowered into the water. The Southern Pacific case exemplifies the statement in *Richfield Oil Corp.* v. *State Board of Equalization, supra,* that the commerce clause and the import clause are not coextensive. Had the goods in the Southern Pacific case been purchased in a foreign country, they would, under the Hooven decision, have been exempt from taxation while stored. The Southern Pacific decision does not require us to select as a

taxable event a point in time when the goods are constitutionally exempt and to declare that because the goods were immune at that time they could not be taxed at a later time.

The tax imposed by sections 6201 and 6202 is upon the use of goods in California. It is sufficient that subsequent to the arrival of the yacht in this state its original package was removed and it was put to use in this state.

Although no authorities have been cited or found which determine the application of the use tax to imported goods, it appears that the immunity of imported goods is ended by their removal from the original package in which they are imported or by their use by the importer. The tests laid down in *Brown* v. *Maryland, supra,* and *Hooven & Allison Co.* v. *Evatt, supra,* for determining the duration of the immunity are met by the finding of the trial court that the yacht was used by the plaintiff from the date it was piloted to Sausalito. The Richfield Oil Company and Matson Navigation Company cases do not, as is seen by the holdings of the United States Supreme Court in the Joy Oil Company and Empresa Siderurgica cases, require that all goods destined for export are exempt from state taxes. It cannot, therefore, as is attempted by the plaintiff, be argued from the Richfield Oil Company and Matson Navigation Company cases, that all goods imported into the United States thereafter remain immune from state or local taxation. The tax was imposed upon the use of the yacht in California which occurred after its exemption as an import had terminated.

The conclusion and judgment that the tax be refunded is contrary to the findings of the trial court, based on undisputed evidence that the yacht was in use by the plaintiff in this state at the time the tax was imposed, and was therefore subject to the use tax under state law; also that at that time, under the facts and applicable federal law, the yacht was no longer immune from taxation in this state.

The judgment is reversed.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J., concurred.

McComb, J., dissented.