STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0501


FIRESTONE POLYMERS

VERSUS

CALCASIEU PARISH SCHOOL SYSTEM, ET AL.


************


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2002-600
HONORABLE RICK BRYANT, DISTRICT JUDGE


************


JIMMIE C. PETERS
JUDGE


************


Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.


AFFIRMED.


Andre B. Burvant
Oreck, Crighton, Adams & Chase
1100 Poydras Street, Suite 1480
New Orleans, LA 70163
(504) 525-8001
ATTORNEYS FOR PLAINTIFF/APPELLANT:
    Firestone Polymers, L.L.C.

Russell J. Stutes
Joel M. Lutz
Stutes, Fonetnot, Lavergne & Lutz
P.O. Drawer 1644
Lake Charles, LA 70601
(337) 433-0022
ATTORNEY FOR DEFENDANTS/APPELLEES:
    Calcasieu Parish School System
    Rufus R. Fruge, Jr.

PETERS, J.

The issue presented in this appeal is whether Firestone Polymers, L.C.C. (hereinafter "Firestone"), which operates a synthetic rubber plant in Calcasieu Parish, Louisiana, may recover a lease tax paid under protest to the Calcasieu Parish School System (hereinafter "School Board") on shipping containers leased out-of-state, delivered to its plant in Calcasieu Parish, and stored and maintained there while periodically used in interstate commerce. Firestone appeals from the trial court's order granting summary judgment in favor of the School Board, ruling that the lease tax was owed. We affirm.

## DISCUSSION OF THE RECORD

The facts giving rise to this litigation are not in dispute. For many years Firestone has operated a synthetic rubber plant in Calcasieu Parish, Louisiana, and the synthetic rubber produced at the plant has been shipped outside the state to numerous tire manufacturers. For shipment the rubber is packed into aluminum containers measuring approximately three feet by four feet in length and width and approximately four feet in depth. Firestone utilizes some 38,000 containers for this transportation.

Firestone leases these containers from various lessors outside Louisiana, and each lease designates Calcasieu Parish as the location of the containers. At the beginning of each lease term, the containers are delivered directly to Firestone at its plant in Calcasieu Parish, where they are imbedded with the Firestone logo, then placed in a storage area there. When needed for shipment the containers are cleaned, loaded with rubber, and transported by rail or truck to their destinations outside Louisiana. After being unloaded at their destinations, the collapsible containers are returned to the Calcasieu plant site where they are cleaned, repaired if necessary, and

put back into the storage area for subsequent use when needed for further interstate shipments.

The Calcasieu Parish School Board, by virtue of its Master Sales and Use Tax Ordinance, assesses a tax on the "lease or rental within the Parish of each item of tangible personal property." Calcasieu Parish Sch. Bd. Tax Ordinance § 2.01I-(B). This ordinance defines "lease or rental" as "the leasing or renting of tangible personal property and the possession or use thereof by the lessee or renter, for a consideration, without transfer of the title of such property." Calcasieu Parish Sch. Bd. Tax Ordinance § 1.10(A).[1]

In 2002, Firestone filed a pleading in the district court of Calcasieu Parish seeking a refund of the taxes paid to the School Board on the shipping container leases pursuant to the ordinance from July 1998 through December 2000.[2] The basis for Firestone's dispute of the lease tax on the shipping containers was that they were used exclusively in interstate commerce and, therefore, not taxable by the School Board.

Because the lease taxes paid by Firestone for the disputed period were not paid under protest, the initial claim for a refund was dismissed in June 2002 on an exception of no right of action. Beginning in April 2002, Firestone began paying the lease taxes under protest, and it supplemented and amended its petition in January 2003, renewing its claim for refunds only with respect to payments beginning in April 2002. The basis for its renewed claim was again that the containers were used

---

[1]This language tracks La.R.S. 47:301(7)(a). The School Board's authority to levy a sales tax upon the sale at retail, the use, the lease or rental, the consumption, and storage for use or consumption of tangible personal property is found in La.R.S. 33:2737.

[2]Firestone also disputed the tax paid on its purchase of propane, but that is no longer an issue in this litigation.

exclusively in interstate commerce and, therefore, were not taxable by the School Board.

Both Firestone and the School Board filed motions for summary judgment. The issue in each motion was the same question of law: whether Louisiana's revenue and taxation laws exclude from local lease taxes these shipping containers used in interstate commerce. The trial court heard the motions in the early part of 2006 and rendered a decision later that year, after the Louisiana Supreme Court rendered its decision in *Word of Life Christian Ctr. v. West*, 04-1484 (La. 4/17/06), 936 So.2d 1226. Relying on the precepts of *Word of Life*, the trial court denied Firestone's motion and granted the School Board's motion.

Firestone appeals the trial court's grant of the summary judgment, contending that *Word of Life* applies only to a use tax and not to a tax on the lease of property ultimately used in interstate commerce. In the alternative, Firestone contends that if *Word of Life* does apply to a tax on a lease, it changed the law and cannot apply retroactively to the taxes paid and involved in this suit.

**OPINION**

The revenue and taxation statute, La.R.S. 47:305 provides certain exclusions and exemptions from sales taxation. The language at issue in this appeal is found in La.R.S. 47:305(E), which reads in pertinent part:

> It is not the intention of any taxing authority to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of any taxing authority to levy a tax on bona fide interstate commerce . . . . It is, however, the intention of the taxing authorities to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.

As can readily be seen, one of the exclusions from local taxation is "a tax on bona fide interstate commerce." *Id.* However, the statute qualifies that exclusion to take out of its reach "a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state." *Id.*

In the decision on which the trial court relied to validate the lease tax imposed by the School Board, the supreme court stated that

> The statutory intent of the Louisiana use tax law is expressed in La. R.S. 47:305(E), which provides that it is not its intention "*to tax bona fide interstate commerce*" but to "*tax tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state*." The purpose of the statute is not to burden goods and products legitimately involved in the flow of interstate commerce which never come to rest in Louisiana.

*Word of Life Christian Ctr.*, 936 So.2d at 1242 (emphasis in the original, footnote omitted).

The issue in *Word of Life* was "the applicability of state and local use tax to the out-of-state purchase of tangible property which is subsequently imported into Louisiana then 'ultimately used' in interstate commerce, in light of La. R.S. 47:305(E), which prohibits a tax on bona fide interstate commerce." *Id.* at 1231. In *Word of Life*, the tax involved was a local use tax, and the tangible personal property was airplanes. Following the out-of-state purchases of two airplanes, both were imported and hangared in East Baton Rouge Parish until they were subsequently used in interstate commerce. The court of appeal held that there was no "taxable moment" when the subject airplanes were "ultimately used" in interstate commerce. *Word of Life Christian Ctr. v. West*, 03-1399, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 213, 214. In reaching that decision, it relied on the holdings of *The Shaw Group, Inc. v.*

4

*Kennedy,* 99-1871 (La.App. 1 Cir. 9/22/00), 767 So.2d 937, and *Tigator Inc. v. West Baton Rouge Police Jury*, 94-1771, 94-1772 (La.App. 1 Cir. 5/5/95), 657 So.2d 221, *writs denied*, 95-2126 (La. 11/17/95), 663 So.2d 712. Both *Shaw* and *Tigator* had held that whether property has come to rest in Louisiana and has become a part of the mass of the property in this state is determined by its ultimate use.

In *Word of Life*, 936 So.2d 1226, the supreme court re-examined the "taxable moment" and "ultimate use" doctrines and rejected the position taken in *Tigator* and *Shaw*. The supreme court also rejected the theory that if the ultimate use of the property was for interstate commerce, the property is not subject to the use tax even if imported to and stored for use in Louisiana. The supreme court noted that it was well settled in jurisprudence that once these planes were imported and hangared in East Baton Rouge, the planes came to rest in Louisiana. At that point, according to the supreme court, a "taxable moment" occurred in this state. *Id.* at 1239. "At that moment, however slight, when the airplanes had been withdrawn from interstate commerce and came to rest in Louisiana, Louisiana's tax on storage and use was effective." *Id.* (footnote omitted).

The supreme court then concluded that the "taxable moment" analysis required an inquiry focusing on three discrete stages of the interstate commerce journey of goods into a taxing jurisdiction, defining the three stages as follows:

> The first stage is the interstate transportation of out-of-state purchased goods into the taxing jurisdiction. The second stage is the end of that interstate transportation, which includes the withdrawal of those goods from interstate commerce, and implies that the goods have come to rest in the taxing jurisdiction and become part of the mass of the property of the state. The principal focus here is the period of time, however slight, that the taxpayer used, stored, or consumed the goods in the taxing jurisdiction. The third stage is the subsequent use, if any, of the goods in interstate commerce.

*Id.* at 1235.

The supreme court, in *Word of Life*, also rejected any interpretation of the word "use" as meaning "ultimate use." It noted that while La.R.S. 47:301(18) defines "use"[3] as "the exercise of any right or power over tangible personal property incident to ownership thereof," it says nothing about "ultimate use." Thus, the supreme court concluded, equating "use" to "ultimate use" conflicted with a plain reading of the statute and led to absurd consequences. The court then adopted the rule from federal jurisprudence that a taxable moment occurs when out-of-state purchased goods reach the end of their interstate transportation into the taxing jurisdiction, but have not yet begun their subsequent journey in interstate commerce.[4] *Id.* This is the second stage of the interstate commerce journey.

In the present case, the tax is a lease tax. At the hearing on the motions for summary judgment, Firestone, relying on the first circuit's *Shaw* and *Tigator* use tax decisions, argued that "ultimate use" should be applicable to a lease tax. The tax involved in *Word of Life* was a use tax. After *Word of Life* rejected the first circuit's "ultimate use" interpretation, Firestone now takes the position in its appeal that the precepts of *Word of Life* do not apply to a lease tax. Its argument for that proposition fails to convince us. The reason given by the supreme court for granting a writ of certiorari in *Word of Life* is enough by itself to explain that the precepts apply to a lease tax. The opinion stated that the reason included the determination of "the

---

[3]Louisiana Revised Statutes 47:301(18) provides, in pertinent part, as follows: "For purposes of the imposition of the sales and use tax levied by a political subdivision or school board, 'use' shall mean and include the exercise of any right or power over tangible personal property incident to the ownership thereof. . .."

[4]The decision on which the court primarily relied was *Southern Pacific Co. v. Gallagher*, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939).

6

applicability of state and local use tax to the out-of-state purchase of tangible property which is subsequently imported into Louisiana then 'ultimately used' in interstate commerce, in light of La.R.S. 47:305(E), which prohibits a tax on bona fide interstate commerce." *Id.* at 1231. We fail to see why the purpose for granting the writ and the scope of the ruling do not apply equally to a lease tax.

Certainly, although "use" as defined in use tax statutory provisions and "use" as contemplated under Louisiana lease law are indistinguishable in many aspects both practical and theoretical, it is clear that a use tax and a lease tax are separate provisions.[5] Sales and use taxes are complementary taxes. *Id.* The sales tax applies when the taxable transaction is consummated within the taxing jurisdiction while the use tax applies when the transaction is consummated outside the taxing jurisdiction, and the goods are subsequently imported and used in the taxing jurisdiction. *Id.* Sales and lease taxes are not complementary taxes and local taxing authorities may tax both transactions separately. *Lafayette Parish Sch. Bd. v. Mkt. Leasing Co., Inc.*, 440 So.2d 81 (La.1983). Both sales and lease taxes are taxes on discrete transactions and two separate transactional events are being taxed, one on the sale price of the thing and the other on the proceeds of a lease of the thing. *Id*.

Although a use tax and a lease tax are separate provisions, this creates no rational basis for applying La.R.S. 47:305(E) to use taxes but not to lease taxes. The essential issue in the present case is whether the interstate commerce exclusion applies to the transaction. The taxable moment analysis does not depend on whether the

---

[5]Louisiana Revised Statutes 47:301(18)(a)(iii) now provides that "[b]eginning July 1, 2002, for purposes of the imposition of the tax levied by any political subdivision of the state, the term 'use' shall not include the purchase, the importation, the consumption, the distribution, or the storage of any tangible personal property which is to be leased or rented in an arm's length transaction in the form of tangible personal property."

7

goods are owned by the user or merely leased by him; the test is whether the goods at the end of the first stage of their interstate journey came to rest in the taxing jurisdiction and became part of the mass of property in the taxing jurisdiction. It is true that the owner of property has the unrestricted *usus* or right to use his property as an incident of ownership, while the lessee is bound by the law applicable to the contract of lease to use the thing (goods) only for the purpose for which it was leased.[6] Still, whether the goods are leased or owned, the test is the same: whether there was a taxable moment; whether the goods came to rest in Calcasieu Parish (the taxing jurisdiction of the School Board) and became a part of the mass of property in that parish.

It is clear that the test is met in this case. In this state a lease is "a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." La.Civ.Code art. 2668.[7] Leases are characterized according to the agreed use of the leased thing; when the thing is to be used for business or commercial purposes, it is a commercial lease. La.Civ.Code art. 2671. Essential elements of a lease are that it must be for a term and the rent must be sufficient to support an onerous contract. La.Civ.Code arts. 2678 and 2675. The lessor is bound to deliver the thing leased at the agreed time and in good condition. La.Civ.Code art. 2684.

---

[6]One of the contractual obligations imposed by law on the lessee is to use the thing only for the purpose for which it was leased. La.Civ.Code art. 2686.

[7]In tax law the basic definition of lease as found in the first sentence of La.R.S. 47:301(7)(a) is "the leasing or renting of tangible personal property and the possession or use thereof by the lessee or renter, for a consideration, without transfer of the title of such property." This definition is consistent with the La.Civ.Code art. 2668 definition of lease.

In *Lafayette Parish Sch. Bd.*, 440 So.2d at 86, the supreme court, focusing its analysis on the domicile of the lessee in determining whether a lease tax could be assessed, stated that it is necessary to identify one situs for the act of leasing:

> The "act of leasing" takes place where the vehicle is kept; that is, where the lessee can be located if lease payments are missed or if the leased property is damaged. The parish declared by the lessee as his domicile, residence, or business address, the place where he can be found, is entitled to receive tax on the proceeds from the lease.

In that case, the supreme court concluded that the taxable incident was not the isolated act of signing the lease agreement, but rather the act of the lessor sending his property into the domiciliary parish of the lessee and collecting monthly rentals for the use of his property there; the act of leasing included the possession by the lessee, and continued contact between lessor and lessee to ensure that the property is "properly maintained and protected against waste; that it is kept in an acceptable state of repair; that it is covered by insurance sufficient to protect the interest of the owner; . . . that the rents . . . are paid by the lessee as they periodically accrue under the terms of the lease." *Id.*

Firestone argues that a lease is a continuing transaction with the tax due on each lease payment, such that "one cannot take a snapshot of a moment in time during a lease transaction and have that moment determinative of the tax consequences for the entire lease." In effect, Firestone is saying that the lease follows the property leased such that the property never came to rest in Calcasieu Parish. This argument, aside from misinterpreting the nature of a lease, is essentially a repetition of the idea that there is no "taxable moment" when the subject property is "ultimately used" in interstate commerce, a theory which was rejected by *Word of Life*.

Actually, a contract of lease is not a series of transactions but a single transaction; it is the performance that is continuous. A contract of lease is one providing for continuous performance, in that it can be performed only through an uninterrupted series of acts of performance. *See* La.Civ.Code art. 2019 and its Revision Comments (b) – 1984. With regard to the second stage of the taxable moment analysis, we can perceive no differences between the taxing of "use" and the taxing of "use-by-lease" sufficient to undercut the application of the precepts of *Word of Life* to a lease tax.

We next turn to a consideration of Firestone's argument based on a regulation in the Louisiana Administrative Code dealing with the treatment of tax levies by local taxing authorities for inter-jurisdictional lease or rental transactions. Louisiana Administrative Code 61:I.4303(B)(3) provides that the tax on the initial lease or rental period is due where the transfer of possession (delivery) of the leased property occurs, and that for subsequent lease periods, when there is no additional transfer of possession, the tax is due to the local taxing jurisdiction where the property is primarily located. That provision then provides for credit to the taxpayer where the primary location of the property moves to another local taxing jurisdiction and that jurisdiction seeks to collect the tax for the lease period that the property is there.

It is clear in the present case that the containers were delivered to Calcasieu Parish, and that at all times involved in the present lawsuit Calcasieu Parish was their primary location. Nevertheless, Firestone argues that LAC 61:I.4303(B)2(a)(I), not B(3), recognizes the interstate commerce exclusion on lease taxes by its provision that "lease tax is not due on the lease of tangible personal property for those periods of time that it is used in bona fide interstate commerce, whether the use in bona fide

interstate commerce is in Louisiana or outside of Louisiana." Firestone offers this language from Section 4303(B)(2) as another argument that the taxable moment test adopted in *Word of Life* cannot be applied to lease taxes. We disagree with Firestone's interpretation of LAC 61:I.4303(B)(2), and conclude that the lease taxes were properly paid to the School Board under LAC 61:I.4303(B)(3).

The reason we cannot accept Firestone's interpretation in this context is found in what the supreme court had to say about the statutory intent of La.R.S. 47:305(E) in *Word of Life Christian Ctr.*, 936 So.2d 1226. According to the supreme court, it is not the intent of the statute "to tax bona fide interstate commerce" but to "tax tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state." *Id.* at 1242. That is to say, if the goods and products were legitimately involved in the flow of interstate commerce and never came to rest in Louisiana, the statute precludes local taxation. However, the supreme court went on to explain that the term "bona fide" described and limited the scope of "interstate commerce" which the state was prohibited from taxing. *Id.* In interpreting the legislative intent, the supreme court concluded that the fact that owners use goods for travel across state lines does not necessarily classify the goods as part of bona fide interstate commerce as used in La.R.S. 47:305(E). *Id.* The court concluded that notwithstanding the prospective use of the *Word of Life* airplanes as instruments of interstate commerce, once the planes were imported and hangared in East Baton Rouge Parish, they came to rest there and became a part of the mass of property there, and a taxable moment occurred there. *Id.* at 1239.

The same reasoning is applicable to the lease taxes in the present case. The situs of the leases at issue is Calcasieu Parish and delivery under the leases occurred

11

the moment the containers came to rest in Calcasieu Parish. At this point, the containers came into Firestone's possession, and a taxable moment occurred at that time.

Finally, we consider Firestone's last contention, which is that if *Word of Life* applies to a lease tax, then it changed the law and cannot be applied retroactively to the taxes Firestone paid under protest. We find no merit to this assignment of error. First, *Word of Life* did not change the law with respect to lease taxes. The supreme court, in *Lafayette Parish Sch. Bd.,* 440 So.2d 81, recognized in 1983 that the parish where the property is kept is the situs of the act of leasing. Furthermore, as pointed out in *Word of Life*, Louisiana's interstate commerce exclusion under consideration, La.R.S. 47:305(E), has been in effect since 1948. The statute's pronouncement that it is not the state's intention to levy a tax on bona fide interstate commerce has been a part of the statute since its inception, consistent with federal jurisprudence at the time of its enactment. *Word of Life Christian Center*, 936 So.2d 1226. Also, one of the announced purposes of the court in granting writs in *Word of Life* was to resolve conflicting decisions among the circuit courts of appeal. *Id.*

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court in all respects. We assess all costs of this appeal to Firestone Polymers, L.L.C.

**AFFIRMED.**

12